70 A.3d 647

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. JOHN
J. LAWLESS, JR., DEFENDANT–RESPONDENT.

Argued February 27, 2013—Decided July 22, 2013.

596

 

598

*Carol M. Henderson,* Assistant Attorney General, argued the cause for appellant (*Jeffrey S. Chiesa,* Attorney General of New Jersey, attorney).

*John J. Zarych* argued the cause for respondent.

Justice PATTERSON delivered the opinion of the Court.

When it enacted *N.J.S.A.* 2C:44–1, the Legislature established aggravating and mitigating circumstances for a court to consider when it sentences a convicted defendant within the statutory range applicable to his or her offense. The first of thirteen enumerated aggravating factors focuses the court's inquiry on "[t]he nature and circumstances of the offense, and the role of the actor therein, including whether or not it was committed in an especially heinous, cruel, or depraved manner[.]" *N.J.S.A.* 2C:44–1(a)(1) (aggravating factor one). The second aggravating factor addresses "[t]he gravity and seriousness of harm inflicted on the victim[.]" *N.J.S.A.* 2C:44–1(a)(2) (aggravating factor two). In determining whether aggravating factor two applies, the sentencing court considers whether "the defendant knew or reasonably

should have known that the victim of the offense was particularly vulnerable or incapable of resistance due to advanced age, ill-health, or extreme youth, or was for any other reason substantially incapable of exercising normal physical or mental power of resistance[.]" *Ibid.* While sentencing courts frequently apply both aggravating factors one and two, each requires a distinct analysis of the offense for which the court sentences the defendant.

This case raises an issue not previously addressed by the Court: whether a sentencing court, identifying relevant aggravating factors under *N.J.S.A.* 2C:44–1(a), may consider the harm suffered by individuals who were physically injured by the defendant's conduct but were not the victims of the offense of which the defendant was convicted. Defendant John J. Lawless, Jr. was charged with eight criminal offenses and several motor vehicle violations following a motor vehicle collision that killed another driver and seriously injured the deceased driver's wife and daughter, who were passengers in his vehicle. Pursuant to a plea agreement, defendant pled guilty to one of the criminal offenses, aggravated manslaughter, *N.J.S.A.* 2C:11–4(a), as well as driving while intoxicated (DWI), *N.J.S.A.* 39:4–50, a motor vehicle offense. The other charges pending against defendant were dismissed pursuant to his plea agreement. Accordingly, defendant was not convicted of any offense committed against either of the injured passengers. Nonetheless, the sentencing court considered the harm suffered by the injured passengers as "harm inflicted on the victim" for purposes of *N.J.S.A.* 2C:44–1(a)(2) and relied upon aggravating factor two, among other aggravating factors, in imposing sentence. The Appellate Division reversed, ruling that injuries sustained by the victim's family members were irrelevant to the court's sentencing determination, and remanded for resentencing.

We affirm. Given defendant's guilty plea to only one criminal offense, aggravated manslaughter, we hold that the sole "victim" for purposes of *N.J.S.A.* 2C:44–1(a)(2) was the deceased driver. Accordingly, the harm inflicted upon the decedent's wife and

daughter is irrelevant to the sentencing court's application of aggravating factor two. That harm, however, may be relevant to the court's application of *N.J.S.A.* 2C:44–1(a)(1), subject to the principle that sentencing courts must avoid double-counting any element of an offense as an aggravating factor, *State v. Kromphold,* 162 *N.J.* 345, 353, 744 *A.*2d 640 (2000). The injuries suffered in the collision by the two passengers may be considered part of the "nature and circumstances of the offense." *N.J.S.A.* 2C:44–1(a)(1). Accordingly, the sentencing court may consider aggravating factor one, *N.J.S.A.* 2C:44–1(a)(1), when defendant is resentenced on remand.

## I.

The motor vehicle collision that gave rise to this case occurred on Saturday, September 12, 2009, in Lower Township. Defendant, a Pennsylvania resident with four Pennsylvania convictions for driving under the influence of alcohol (DUI), was attending a "Motorcycle Weekend" in Wildwood. After consuming an estimated twelve beers over several hours, defendant left Wildwood at approximately 8:00 p.m., driving his Chrysler Sebring convertible. According to the account provided by defendant to the judge in his plea hearing, defendant crossed a bridge from Wildwood onto Route 47 and turned left onto Route 9 South. Defendant later testified that he "must have blacked out at that point" and claimed to have no further recollection of the events leading up to his hospitalization.

At approximately 8:27 p.m., Lower Township Police were called to Route 9. They observed defendant's unoccupied and damaged Chrysler Sebring convertible in the middle of the highway. South of defendant's vehicle on Route 9, officers saw a heavily-damaged Ford Escort with three occupants. The driver, Fredrick Shelton, was dead at the scene. His wife, Sheri Shelton, the front-seat passenger, was seriously hurt; her internal injuries, broken ribs and broken forearm required several surgeries and a month-long stay in the hospital. Fredrick and Sheri's daughter, Brittany

Shelton, riding in the back seat when the collision occurred, was less severely injured than her mother, but also required hospitalization.

Police officers found defendant lying in a grassy area, screaming. Defendant initially contended that an unidentified friend had been driving his vehicle. The officers, however, found a sandal matching one worn by defendant between the brake and the accelerator of the car. They detected the smell of alcohol on defendant's breath. A blood test conducted with defendant's consent after he was taken to a hospital confirmed that defendant was impaired by alcohol. In that test, defendant's blood alcohol content was determined to be .229.

Police officers briefly interviewed defendant. He gave them a false name, address and Social Security number, and again attempted to blame an unidentified friend for the accident. Defendant then terminated the interview by requesting an attorney. While defendant was hospitalized, the officers determined that defendant's Pennsylvania driver's license had been suspended because of a prior DUI conviction.

A Cape May County Grand Jury indicted defendant for first-degree aggravated manslaughter, *N.J.S.A.* 2C:11-4(a), first-degree vehicular homicide within 1,000 feet of school property, *N.J.S.A.* 2C:11-5, third-degree causing death while driving with a suspended license, *N.J.S.A.* 2C:40-22(a), fourth-degree causing serious bodily injury while driving with a suspended license, *N.J.S.A.* 2C:40-22(b), second-degree aggravated assault, *N.J.S.A.* 2C:12-1(b)(1), two counts of third-degree aggravated assault, *N.J.S.A.* 2C:12-1(c)(3),[1] and third-degree hindering apprehension, *N.J.S.A.* 2C:29-3(b). Defendant's indictment for violations of *N.J.S.A.* 2C:11-4(a), *N.J.S.A.* 2C:11-5 and *N.J.S.A.* 2C:40-22(a) arose from

---

[1] While the indictment refers to *N.J.S.A.* 2C:12-1(c)(3) as third-degree aggravated assault, it is evident based on the substance of the indictment, the presentence report and the judgment of conviction that the proper charge under *N.J.S.A.* 2C:12-1(c)(3) was second-degree assault by auto.

the death of Fredrick Shelton. With the exception of defendant's indictment for hindering apprehension, the remaining counts of the indictment arose from the injuries sustained by Sheri or Brittany Shelton. In addition, defendant was charged with several motor vehicle violations, including DWI in violation of *N.J.S.A.* 39:4–50.

On September 13, 2010, the date scheduled for an *N.J.R.E.* 404(b) evidentiary hearing to determine the admissibility of defendant's prior Pennsylvania DUI convictions, the State and defense counsel informed the judge that they had reached a plea agreement. By the terms of the agreement, defendant would plead guilty to one count of first-degree aggravated manslaughter and one count of DWI. The plea agreement contemplated that all other charges, including the charges relating solely to the injuries sustained by Sheri or Brittany Shelton, would be dismissed. The prosecution and the defense did not agree on a recommended sentence.

The judge immediately held a plea hearing. The court confirmed defendant's understanding of the rights that he would relinquish by virtue of his guilty plea, advised him that his sentence would be within a range from ten to thirty years' imprisonment subject to the provisions of the No Early Release Act (NERA), *N.J.S.A.* 2C:43–7.2, and elicited a factual basis for defendant's plea to the first-degree aggravated manslaughter charge. The judge found the factual basis to be adequate, ordered a presentence report and denied an application for bail pending sentencing.

Defendant was sentenced on November 12, 2010. Defendant's counsel expressed his client's remorse for the accident, presented the testimony of defendant's brothers about defendant's alcohol problems and advised the court that defendant was involved in alcohol counseling while in prison. The State called as witnesses members of the Shelton family, their pastor and several friends, who spoke of the loss of Fredrick Shelton and the impact of the accident on Sheri and Brittany Shelton. The State requested that

the court find aggravating factor two, *N.J.S.A.* 2C:44–1(a)(2), aggravating factor three, *N.J.S.A.* 2C:44–1(a)(3) ("[t]he risk that the defendant will commit another offense"), aggravating factor six, *N.J.S.A.* 2C:44–1(a)(6) ("[t]he extent of the defendant's prior criminal record and the seriousness of the offenses of which he has been convicted"), and aggravating factor nine, *N.J.S.A.* 2C:44–1(a)(9) ("[t]he need for deterring the defendant and others from violating the law"). The State did not ask the court to find aggravating factor one, *N.J.S.A.* 2C:44–1(a)(1). It urged the court to impose a maximum sentence of thirty years' incarceration.

The sentencing court found aggravating factor two, citing the injuries suffered by Sheri and Brittany Shelton, and assigned "great weight" to this factor. It also found aggravating factor three, noting that defendant "consumes alcohol to a pathologic degree" when free to do so. Although defendant had no prior indictable offenses, the court found aggravating factor six, assigning "substantial weight" to that factor, and also found aggravating factor nine, noting a need to deter defendant from further criminal conduct. The court found no mitigating factors. It imposed a thirty-year term subject to NERA's eighty-five percent parole disqualifier, as well as the payment of fines and restitution.

Defendant appealed his sentence. The Appellate Division held that the sentencing court should not have found aggravating factor two on the record of this case. *State v. Lawless,* 423 *N.J.Super.* 293, 304–05, 32 *A.*3d 562 (App.Div.2011). It construed the term "victim" for purposes of *N.J.S.A.* 2C:44–1(a)(2) to mean only Fredrick Shelton, not his wife and daughter who were his passengers when his vehicle was struck by defendant's vehicle. *See id.* at 304, 32 *A.*3d 562. The panel found "[a] distinction must be drawn between the direct harm inflicted on the victim of the particular charge to which the defendant pleads and the direct harm inflicted upon third parties." *Ibid.* It concluded that the harm inflicted upon Sheri and Brittany Shelton should have been excluded from the sentencing court's inquiry with respect to

aggravating factor two and remanded for resentencing.[2] *Id.* at 304–05, 32 *A.*3d 562.

We granted the State's motion for leave to appeal. 209 *N.J.* 230, 36 *A.*3d 1062 (2012).

## II.

The State contends that the Appellate Division construed too narrowly the term "victim" in *N.J.S.A.* 2C:44–1(a)(2). It argues that the statute's reference to "harm inflicted on the victim" should be read to include the full range of harm suffered by an individual that can be attributed to the defendant's conduct, regardless of whether that conduct ultimately resulted in a conviction. It asserts that the interests of uniformity in sentencing compel a court to consider the number of victims of the offense and the extent of each victim's injuries. The State also urges the Court to consider the nature and circumstances of the offense, citing *N.J.S.A.* 2C:44–1(a)(1). The State argues that the panel's ruling is inconsistent with the discretion that our sentencing laws afford to trial judges. It urges the Court to adopt a concept of a "victim" analogous to that set forth in the Victim's Rights Amendment to the New Jersey Constitution (VRA), *N.J. Const.* art. I, ¶ 22, and the Crime Victim's Bill of Rights, *N.J.S.A.* 52:4B–34 to – 38, which would include Sheri and Brittany Shelton.

Defendant argues that while a sentencing court should consider the totality of the circumstances when it sentences an offender, defendant pled guilty to a crime involving only one victim, and no

---

[2] The Appellate Division also ruled that the sentencing court should not have found aggravating factor six, *N.J.S.A.* 2C:44–1(a)(6), the extent and severity of defendant's criminal record. *Lawless, supra,* 423 *N.J.Super.* at 305, 32 *A.*3d 562. It held that defendant's previous convictions for DWI should not have been held to constitute a "prior criminal record" for purposes of *N.J.S.A.* 2C:44–1(a)(6) because DWI is not a " 'crime' as defined by *N.J.S.A.* 2C:1–4 or an 'offense' as defined by *N.J.S.A.* 2C:1–14(k)." *Ibid.* The State did not raise the court's finding as to aggravating factor six in its motion for leave to appeal, and accordingly, the issue is not before the Court.

findings on aggravating factor two that derive from the injuries of other victims should be sustained. Defendant counters the State's reliance on constitutional and statutory provisions addressing victims' rights by arguing that the Crime Victim's Bill of Rights, *N.J.S.A.* 52:4B-36, is designed to allow a family member to speak as a proxy for a victim, and that neither that provision, nor *N.J.S.A.* 52:4B-37, defining victim for purposes of *N.J.S.A.* 52:4B-36, expands the traditional definition of a crime victim. He urges the Court to affirm the panel's determination.

### III.

We assess the judge's sentencing determination under a deferential standard of review. An appellate court does not substitute its judgment for the judgment of the sentencing court. *State v. Cassady,* 198 *N.J.* 165, 180, 966 *A.*2d 473 (2009); *State v. O'Donnell,* 117 *N.J.* 210, 215, 564 *A.*2d 1202 (1989). In *State v. Roth,* 95 *N.J.* 334, 364–65, 471 *A.*2d 370 (1984), the Court noted the limited role of an appellate court in sentencing:

> [A]n appellate court ... can (a) review sentences to determine if the legislative policies, here the sentencing guidelines, were violated; (b) review the aggravating and mitigating factors found below to determine whether those factors were based upon competent credible evidence in the record; and (c) determine whether, even though the court sentenced in accordance with the guidelines, nevertheless the application of the guidelines to the facts of this case makes the sentence clearly unreasonable so as to shock the judicial conscience.

Appellate courts are " 'expected to exercise a vigorous and close review for abuses of discretion by the trial courts.' " *State v. Natale,* 184 *N.J.* 458, 489, 878 *A.*2d 724 (2005) (quoting *State v. Jarbath,* 114 *N.J.* 394, 401, 555 *A.*2d 559 (1989)). They are " 'bound to affirm a sentence, even if [they] would have arrived at a different result, as long as the trial court properly identifies and balances aggravating and mitigating factors that are supported by competent credible evidence in the record.' " *Ibid.* (alteration in original) (quoting *O'Donnell, supra,* 117 *N.J.* at 215, 564 *A.*2d 1202).

Consistent with this limited appellate role, we consider whether the sentencing court properly construed the term "victim" in *N.J.S.A.* 2C:44–1(a)(2) to include the two injured passengers in the decedent's vehicle. That inquiry invokes established principles of statutory construction. "When construing a statute, our primary goal is to discern the meaning and intent of the Legislature." *State v. Gandhi*, 201 *N.J.* 161, 176, 989 *A.*2d 256 (2010) (citing *State v. Smith*, 197 *N.J.* 325, 332, 963 *A.*2d 281 (2009)). We review the statute's plain language, giving its "words their ordinary meaning and significance," in the context of "related provisions so as to give sense to the legislation as a whole." *DiProspero v. Penn*, 183 *N.J.* 477, 492, 874 *A.*2d 1039 (2005). The Court does not " 'rewrite a plainly-written enactment of the Legislature,' " or infer " 'that the Legislature intended something other than that expressed by way of the plain language.' " *Ibid.* (quoting *O'Connell v. State*, 171 *N.J.* 484, 488, 795 *A.*2d 857 (2002)).

The statute that defines the aggravating and mitigating factors, *N.J.S.A.* 2C:44–1, is a primary component of a sentencing scheme whose "dominant, if not paramount, goal . . . is uniformity in sentencing." *Kromphold, supra*, 162 *N.J.* at 352, 744 *A.*2d 640 (citing *State v. Pillot*, 115 *N.J.* 558, 571, 560 *A.*2d 634 (1989)). "[T]he Code's drafters 'establishe[d] a general framework to guide judicial discretion in imposing sentences' to ensure that similarly situated defendants did not receive dissimilar sentences." *Natale, supra*, 184 *N.J.* at 485, 878 *A.*2d 724 (second alteration in original) (quoting *State v. Hodge*, 95 *N.J.* 369, 374–75, 471 *A.*2d 389 (1984)). With the passage of the Code's sentencing guidelines, *N.J.S.A.* 2C:44–1(a) and (b), the focus of sentencing shifted from an approach that "balanced the defendant's capacity for rehabilitation with the other purposes of punishment" to "the offense-oriented analysis of the Code." *Hodge, supra*, 95 *N.J.* at 378, 471 *A.*2d 389.[3]

---

[3] In addition to aggravating factors one, two, three, six and nine, relevant here, *N.J.S.A.* 2C:44–1(a) provides for eight other aggravating factors and *N.J.S.A.* 2C:44–1(b) provides for thirteen mitigating factors.

The statutory scheme and our case law define in detail the task of the sentencing court following its determination that a term of incarceration should be imposed. Although the Court in *Natale* did not establish an inflexible rule regarding the weighing of aggravating and mitigating factors, it commented that "reason suggests that when the mitigating factors preponderate, sentences will tend toward the lower end of the range, and when the aggravating factors preponderate, sentences will tend toward the higher end of the range." *Natale, supra,* 184 *N.J.* at 488, 878 *A.*2d 724. The sentencing court's determination of what aggravating and mitigating factors apply to a defendant is thus a critical step.

In their application of the *N.J.S.A.* 2C:44–1 factors, sentencing courts are cautioned to avoid "double counting" circumstances that the Legislature has already incorporated as an element of the offense. *See State v. Carey,* 168 *N.J.* 413, 425, 775 *A.*2d 495 (2001). Elements of a crime, including those that establish its grade, may not be used as aggravating factors for sentencing of that particular crime. *Id.* at 425–26, 775 *A.*2d 495; *State v. Pineda,* 119 *N.J.* 621, 627, 575 *A.*2d 855 (1990); *State v. Yarbough,* 100 *N.J.* 627, 633, 498 *A.*2d 1239 (1985), *cert. denied,* 475 *U.S.* 1014, 106 *S.Ct.* 1193, 89 *L.Ed.*2d 308 (1986). Injuries to victims of other crimes of which defendant was convicted, however, may be used as aggravating factors for sentencing of the defendant's particular offense. *See Carey, supra,* 168 *N.J.* at 425–26, 775 *A.*2d 495 (concluding injuries to other passengers may be used as aggravating factor in sentencing defendant for vehicular homicide, despite fourth-degree assault by auto charges against defendant for passengers' injuries); *State v. Travers,* 229 *N.J.Super.* 144, 154, 550 *A.*2d 1281 (App.Div.1988) (finding sentencing court could use high number of deaths to support aggravating factor where defendant charged with three counts of death by auto and sentenced concurrently). Thus, the sentencing court must make careful judgments about the relevancy of a particular circumstance to the *N.J.S.A.* 2C:44–1(a) and (b) factors.

Within the parameters of the statutory aggravating and mitigating factors, the sentencing court evaluates "a range of information unconstrained by evidential considerations." *State v. Randolph*, 210 *N.J.* 330, 348 (2012) (citing *Natale, supra*, 184 *N.J.* at 486, 878 *A.*2d 724). The sentencing judge exercises "a far-ranging discretion as to the sources and types of evidence used to assist him or her in determining the kind and extent of punishment to be imposed." *State v. Davis*, 96 *N.J.* 611, 619–20, 477 *A.*2d 308 (1984). Nonetheless, "[c]onsideration of an inappropriate aggravating factor violates the guidelines and thus is grounds for vacating sentence." *Pineda, supra*, 119 *N.J.* at 628, 575 *A.*2d 855 (citing *O'Donnell, supra*, 117 *N.J.* at 215, 564 *A.*2d 1202). Accordingly, in appellate review of a sentence, it is important to define the scope of evidence that is relevant to an application of a given aggravating or mitigating factor.

When it drafted *N.J.S.A.* 2C:44–1(a), the Legislature chose comprehensive language to define aggravating factor one: "[t]he nature and circumstances of the offense, and the role of the actor therein, including whether or not it was committed in an especially heinous, cruel, or depraved manner[.]" *N.J.S.A.* 2C:44–1(a)(1). Under this factor, the sentencing court reviews the severity of the defendant's crime, "the single most important factor in the sentencing process," assessing the degree to which defendant's conduct has threatened the safety of its direct victims and the public. *Hodge, supra*, 95 *N.J.* at 378–79, 471 *A.*2d 389; *State v. Megargel*, 143 *N.J.* 484, 500, 673 *A.*2d 259 (1996). "The paramount reason we focus on the severity of the crime is to assure the protection of the public and the deterrence of others." *Megargel, supra*, 143 *N.J.* at 500, 673 *A.*2d 259. "The higher the degree of the crime, the greater the public need for protection and the more need for deterrence." *Ibid.*

In that inquiry—focused on the magnitude of the offense as a measure of the need to shield the public and deter future crimes—courts applying aggravating factor one focus on the gravity of the defendant's conduct, considering both its impact on its

immediate victim and the overall circumstances surrounding the criminal event. *See State v. Bowens*, 108 *N.J.* 622, 639, 532 *A.*2d 215 (1987) (focusing on "brutal, senseless nature of [a] stabbing"); *State v. T.C.*, 347 *N.J.Super.* 219, 244, 789 *A.*2d 173 (App.Div.2002) (considering mother's "horrifying and despicable" physical abuse of her young child), *certif. denied*, 177 *N.J.* 222, 827 *A.*2d 289 (2003); *State v. Frost*, 242 *N.J.Super.* 601, 621–22, 577 *A.*2d 1282 (App.Div.) (discussing defendant placing victim in a "hostage" situation), *certif. denied*, 127 *N.J.* 321, 604 *A.*2d 596 (1990); *State v. Blow*, 237 *N.J.Super.* 184, 193, 567 *A.*2d 253 (App.Div.1989) (considering "number of transactions ... the quantity of drugs and money involved, and number of heroin-filled glassine envelopes found on defendant" in a drug distribution case), *rev'd on other grounds*, 123 *N.J.* 472, 473, 588 *A.*2d 821 (1991); *State v. Devlin*, 234 *N.J.Super.* 545, 557, 561 *A.*2d 280 (App.Div.) (indicating in drunk driving/death by auto, defendant knew he would have to drive while he became extremely intoxicated), *certif. denied*, 117 *N.J.* 653, 569 *A.*2d 1348 (1989); *State v. Lewis*, 223 *N.J.Super.* 145, 148, 153, 538 *A.*2d 399 (App.Div.) (considering "painful, dreadful" death by fire of four-year-old child), *certif. denied*, 111 *N.J.* 584, 546 *A.*2d 510 (1988); *see also* Cannel, *New Jersey Criminal Code Annotated*, comment 3 on *N.J.S.A.* 2C:44–1(a) (2013) (citing *State v. Louis*, 117 *N.J.* 250, 253, 566 *A.*2d 511 (1989) for principle that "raping of a mother and stabbing of her minor child in the presence of each other ... seem to be proper a(1) factors"). The sentencing court thus undertakes a thorough and broad inquiry under aggravating factor one.

■ In formulating aggravating factor two, the Legislature prescribed a more limited inquiry. *N.J.S.A.* 2C:44–1(a)(2) compels "a pragmatic assessment of the totality of harm inflicted by the offender on the victim." *Kromphold, supra*, 162 *N.J.* at 358, 744 *A.*2d 640. Although the Legislature did not define "victim" for purposes of *N.J.S.A.* 2C:44–1(a)(2), the context in which the word is used is instructive. The statutory language denotes the direct interaction between offender and victim—the "harm inflicted" by

the former upon the latter. *N.J.S.A.* 2C:44–1(a)(2). It focuses on the setting of the offense itself with particular attention to any factors that rendered the victim vulnerable or incapable of resistance at the time of the crime. *Ibid.* Accordingly, the "victim," for purposes of aggravating factor two, is the individual against whom the offense is committed.[4]

Consistent with this principle, if a defendant is convicted of offenses against multiple victims, the harm inflicted upon all such victims can be considered when the sentencing court applies aggravating factor two. For example, in *Carey, supra,* 168 *N.J.* at 420, 775 *A.*2d 495, after a DWI collision in which two people were killed and two others were severely injured, the defendant was convicted by a jury of two counts of vehicular homicide, *N.J.S.A.* 2C:11–5, and two counts of assault by auto, *N.J.S.A.* 2C:12–1(c). This Court reversed the decision of the Appellate Division that had remanded for resentencing. *Carey, supra,* 168 *N.J.* at 421, 775 *A.*2d 495. The Court held that while the deaths of two of the victims constituted elements of the vehicular homicide offenses, and were thus irrelevant to any aggravating factor for purposes of sentencing, the "extensive injuries sustained by [the two surviving victims] warranted the trial court's reliance on the gravity and seriousness of harm aggravating factor independent of the deaths of the two other victims" for purposes of sentencing on the

---

[4] This construction of the term is consistent with definitions found in portions of the criminal code applying to specific offenses. For example, in the context of sexual offenses, a victim "means a person alleging to have been subjected to offenses proscribed by [*N.J.S.A.* 2C:14–1 to –10]." *N.J.S.A.* 2C:14–1(b). In domestic violence matters, a victim is defined as "a person protected under [*N.J.S.A.* 2C:25–17 to –35] and shall include any person who is 18 years of age or older or who is an emancipated minor and who has been subjected to domestic violence by a spouse, former spouse, or any other person who is a present or former household member[,] ... any person, regardless of age, who has been subjected to domestic violence by a person with whom the victim has a child in common, or with whom the victim anticipates having a child in common, if one of the parties is pregnant[, and] ... any person who has been subjected to domestic violence by a person with whom the victim has had a dating relationship." *N.J.S.A.* 2C:25–19(d).

vehicular homicide offenses. *Id.* at 425–26, 775 *A.2d* 495. In contrast to this case, in which defendant was convicted of one crime involving a single victim, each of the four victims against whom the defendant, Carey, had committed offenses were relevant to the sentencing court's analysis of aggravating factor two. *Id.* at 426, 775 *A.2d* 495; *see also Devlin, supra,* 234 *N.J.Super.* at 550, 557–58, 561 *A.2d* 280 (concluding infant's injuries and death of mother could be considered in sentencing court's analysis of defendant's convictions of death by auto and assault by auto); *Travers, supra,* 299 *N.J.Super.* at 154, 550 *A.2d* 1281 (finding court properly considered number of deaths caused by defendant in sentencing on conviction of three counts of death by auto and DWI, in light of court's imposition of concurrent sentences). When the defendant has been convicted of offenses involving more than one victim, all such victims are relevant to the analysis under *N.J.S.A.* 2C:44–1(a)(2).

The word "victim" in *N.J.S.A.* 2C:44–1(a)(2), however, has never been held to extend beyond the direct victims of the offense or offenses for which the sentence is imposed. In a setting of family members suffering emotional harm due to a relative's death, the Appellate Division confirmed the limited scope of the term "victim" in *State v. Radziwil,* 235 *N.J.Super.* 557, 575, 563 *A.2d* 856 (App.Div.1989), *aff'd o.b.,* 121 *N.J.* 527, 528, 582 *A.2d* 1003 (1990). There, the defendant was convicted of aggravated manslaughter in violation of *N.J.S.A.* 2C:11–4(a), and death by auto, *N.J.S.A.* 2C:11–5, after a motor vehicle accident that killed another driver. *Radziwil, supra,* 235 *N.J.Super.* at 561, 563 *A.2d* 856. Applying aggravating factor two, the court considered the emotional trauma suffered by the family of the deceased driver. *See id.* at 575, 563 *A.2d* 856. In a decision affirmed by this Court, the Appellate Division reversed, construing "victim" to mean only the decedent:

> [T]he trial court erred in treating the emotional trauma to the victim's family caused by his death as an aggravating factor. The wording of *N.J.S.A.* 2C:44–1a(2), which includes consideration of the victim's power of resistance, indicates that the Legislature intended this aggravating factor to relate to the harm inflicted on the "victim of the offense" rather than the victim's relatives.
>
> [*Ibid.*]

While *Radziwil* is not precisely analogous to the present case, because the family members in that case were not physically injured by the defendant's conduct, it properly defined the "victim" to be the individual harmed by the crime for which the defendant was convicted.

Thus, subject to the bar on double counting an element of the offense in the analysis, the harm inflicted on the victim of the offense for which the defendant is sentenced is relevant to aggravating factor two. Neither the plain language of the statute nor case law applying it suggests that the term "victim" has a broader meaning. If the defendant has not been convicted of offenses involving other victims, then the harm inflicted on those victims is excluded from consideration under aggravating factor two.

The State argues that for purposes of *N.J.S.A.* 2C:44–1(a)(2), the Court should adopt a definition of "victim" that would include the close family members of a deceased victim, as does the definition incorporated in the VRA, *N.J. Const.* art. I, ¶ 22. The VRA defines "victim of a crime," for purposes of that paragraph, as

a person who has suffered physical or psychological injury or has incurred loss of or damage to personal or real property as a result of a crime or an incident involving another person operating a motor vehicle while under the influence of drugs or alcohol, and ... the spouse, parent, legal guardian, grandparent, child or sibling of the decedent in the case of a criminal homicide.

[*N.J. Const.* art. I, ¶ 22.]

The State further cites the concept of a "victim" in the Crime Victim's Bill of Rights, *N.J.S.A.* 52:4B–34 to –38.[5] That provision defines "victim" as set forth in *N.J.S.A.* 52:4B–37:

---

[5] The Crime Victim's Bill of Rights guarantees crime victims, including in some instances designated family members, eighteen enumerated rights, including the rights "[t]o be treated with dignity and compassion by the criminal justice system; [t]o be informed about the criminal justice process;" and "[t]o be free from intimidation, harassment or abuse by any person including the defendant or any other person acting in support of or on behalf of the defendant, due to the involvement of the victim or witness in the criminal justice process[.]" *N.J.S.A.* 52:4B–36.

"[V]ictim" means a person who suffers personal, physical or psychological injury or death or incurs loss of or injury to personal or real property as a result of a crime committed by an adult or an act of delinquency that would constitute a crime if committed by an adult, committed against that person. "Victim" also includes the nearest relative of the victim of a criminal homicide.

The provisions cited by the State serve important legislative objectives. The VRA is intended to guarantee crime victims and their families "fairness, compassion and respect[ful]" treatment "by the criminal justice system," a right to be present at proceedings and "rights and remedies as may be provided by the Legislature." *N.J. Const.* art. I, ¶ 22. Its expansive definition of "victim" incorporates family members who may stand as proxy for a deceased relative in the legal process. *Ibid.* The Crime Victim's Bill of Rights similarly addresses the criminal justice system's treatment of victims of a crime. *State v. Tedesco,* 214 *N.J.* 177, 188–89, 69 *A.*3d 103, 109, 2013 *WL* 3155397 (2013). *N.J.S.A.* 2C:44–1(a)(2) serves an equally important but different purpose, focusing on the defendant's impact on the victim of the crime in which defendant was convicted. The legislative purpose is to focus the sentencing court on the circumstances of the crime itself. Accordingly, the expansive meaning of "victim" in the VRA and corresponding legislation does not apply in the setting that we consider here.

In sum, for purposes of aggravating factor two, the "victim" constitutes any person who was directly harmed by the defendant in the exact offense of which he or she stands convicted. In contrast to *N.J.S.A.* 2C:44–1(a)(1)'s broad concept of "the nature and circumstances of the offense," *N.J.S.A.* 2C:44–1(a)(2)'s plain language calls for a precise inquiry limited to the direct victim of the offense. Thus, if the defendant harmed other individuals but was not convicted of offenses against those individuals, they do not constitute "victims" within the meaning of *N.J.S.A.* 2C:44–1(a)(2).

### IV.

Applied here, the plain language of *N.J.S.A.* 2C:44–1(a) requires that defendant be resentenced for the serious offenses to

which he pled guilty. In its discretion, the sentencing court may consider the severe injuries suffered by Sheri Shelton and the less serious but significant injuries suffered by her daughter Brittany as part of the "nature and circumstances of the offense" inquiry authorized by *N.J.S.A.* 2C:44–1(a)(1). Defendant's conduct in driving while intoxicated and colliding with the Shelton family's vehicle not only put Fredrick Shelton at risk, but also imperiled the safety of his wife and daughter. The injuries that the surviving victims sustained in the collision between defendant's vehicle and their own may be pertinent to the court's review of aggravating factor one.

The harm to both Sheri and Brittany Shelton is, however, irrelevant to *N.J.S.A.* 2C:44–1(a)(2). Defendant's aggravated manslaughter offense had a single victim: Fredrick Shelton, whose death is an element of the offense under *N.J.S.A.* 2C:11–4(a). Because they survived the tragic collision that took Fredrick Shelton's life, Sheri and Brittany Shelton were not "victims" of first-degree aggravated manslaughter within the meaning of *N.J.S.A.* 2C:44–1(a)(2). Consequently, their injuries should not be considered by the sentencing court to support the application of aggravating factor two when the court resentences defendant.

## V.

The judgment of the Appellate Division is affirmed, and the matter is remanded to the sentencing court for imposition of defendant's sentence in accordance with this opinion.

*For affirmance and remandment*—Chief Justice RABNER and Justices LaVECCHIA, ALBIN, HOENS, PATTERSON and Judge RODRÍGUEZ (temporarily assigned)—6.

*Opposed*—None.

*Not participating*—Judge CUFF (temporarily assigned).