**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5308-15T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JOSE SANTANA, a/k/a JOSE
DURAN,

    Defendant-Appellant.

_____

          Submitted June 5, 2018 — Decided July 6, 2018

          Before Judges Sumners and Moynihan.

          On appeal from Superior Court of New Jersey,
          Law Division, Camden County, Indictment No.
          13-08-2521.

          Joseph E. Krakora, Public Defender, attorney
          for appellant (Joshua D. Sanders, Assistant
          Deputy Public Defender, of counsel and on the
          brief).

          Gurbir S. Grewal, Attorney General, attorney
          for respondent (Adam Klein, Deputy Attorney
          General, of counsel and on the brief).

          Appellant filed a pro se supplemental brief.

PER CURIAM

Defendant appeals from jury-tried convictions for second-degree sexual assault, N.J.S.A. 2C:14-2(b) (count one), and third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a) (a lesser-included offense under count two), arguing:

> POINT I
>
> THE COURT FAILED TO CHARGE THE JURY IN RELATION TO [DEFENDANT'S] STATEMENT AND THE REMAINDER OF THE CHARGE THAT WAS GIVEN WAS INSUFFICIENT TO ADVISE THE JURY OF THE NEED TO CRITICALLY AND EFFECTIVELY EVALUATE HIS STATEMENT IN LIGHT OF THE REALITY THAT JURORS HAVE GREAT DIFFICULTY DISTINGUISHING BETWEEN FALSE CONFESSIONS AND TRUE CONFESSIONS. U.S. CONST. AMEND. VI; N.J. CONST. ART I, ¶ 10.
>
> POINT II
>
> THE SENTENCE IS MANIFESTLY EXCESSIVE.

And contending, in a supplemental pro se brief,

> POINT I
>
> THE TRIAL COURT ERRED IN CONCLUDING THAT APPELLANT'S STATEMENTS WERE NOT IN VIOLATION OF THE MIRANDA[1] WARNING WHERE A SPANISH INTERPRETER SHOULD HAVE BEEN AFFORDED TO HIM BEFORE HIS SIGNATURE WAS PLACED ON THE WAIVER OF RIGHTS FORM.

We affirm.

Defendant contends the trial judge erred — following the admission of his video-recorded statement to detectives from the Camden County Prosecutor's Office and Cherry Hill Police

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

Department — when she failed to present to the jury the "Statements of Defendant" model jury charge,[2] — familiarly referred to as a Hampton[3] charge or instruction — which he argues should have been modified to reflect the unreliability of false statements.

Defendant neither requested a Hampton charge nor objected to the instruction provided the jury. Nonetheless, our Supreme Court, in State v. Jordan, 147 N.J. 409, 425 (1997), instructed:

> Whether requested or not, whenever a defendant's oral or written statements, admissions, or confessions are introduced in evidence the Hampton instruction, directing the jury to determine the credibility of the statements without any knowledge that the court has already determined the issue of voluntariness, should be given. By using the term "shall" in N.J.R.E. 104(c), we expressly recognized that a Hampton charge is required. Because of the critical role that a defendant's oral and written statement may have, a jury should be advised to focus on the credibility of those statements. Indeed, unless a defendant specifically requests that the Hampton charge not be given, and the trial court satisfies itself with written findings that such reasons have merit, a Hampton charge should always be given.

As reflected in the model charge, once a defendant's statement is submitted to the jury, jurors must be "instructed that they should

---

[2] Model Jury Charge (Criminal), "Statements of Defendant" (rev. June 14, 2010).

[3] State v. Hampton, 61 N.J. 250 (1972).

decide whether in view of all the . . . circumstances" regarding whether the statement was voluntary, including the waiver of <u>Miranda</u> rights after administration of <u>Miranda</u> warnings, "the defendant's confession is true. If they find that it is not true, then they must treat it as inadmissible and disregard it for purposes of discharging their function as fact finders on the ultimate issue of guilt or innocence." <u>Hampton</u>, 61 N.J. at 272; <u>see also</u> <u>Model Jury Charge (Criminal)</u>, "Statements of Defendant" (rev. June 14, 2010).

Because this alleged error went unchallenged at trial, it is subject to plain error analysis. <u>R.</u> 2:10-2; <u>State v. Macon</u>, 57 N.J. 325, 336-37 (1971). In the setting of this case we consider that:

> The failure of a court to give a <u>Hampton</u> charge, however, is not reversible error per se. It is reversible error only when, in the context of the entire case, the omission is "clearly capable of producing an unjust result. . . ." <u>R.</u> 2:10-2. That problem would arise most frequently when the defendant's statement is critical to the State's case and when the defendant has challenged the statement's credibility. If, however, the defendant's statement is unnecessary to prove defendant's guilt because there is other evidence that clearly establishes guilt, or if the defendant has acknowledged the truth of his statement, the failure to give a <u>Hampton</u> charge would not be reversible error.
>
> [<u>Jordan</u>, 147 N.J. at 425-26 (alteration in original).]

We note the State's introduction of: the eight-year-old victim's fresh complaint[4] on the date of the assault; her video-recorded statement admitted into evidence under the tender-years exception;[5] and a sexual assault nurse examiner's testimony that on physical examination on the date of the assault, the victim's vaginal and anal area was red and swollen — and photographs of that condition — buttressed the allegations against defendant.

Moreover, we mark the use to which defendant put the statement during the trial. Reminding the jury that they could not draw an adverse inference from defendant's choice not to testify, defense counsel told the jury, "Because even though he didn't personally stand before you, his video, which was allegedly the admission of guilt testified for him."

Defense counsel — as he did many times during summation — strategically referred to defendant's statement as "testimony" which supported the defense theory that the touching was accidental, not criminally intentional, a tactic obvious from counsel's questioning of the prosecutor's detective during the

---

[4] State v. Bethune, 121 N.J. 137 (1990).

[5] N.J.R.E. 803(c)(27); State v. D.G., 157 N.J. 112 (1999).

<u>Miranda</u> hearing.[6] After apprising the jury of the judge's anticipated instruction that the State must prove that the sexual contact was intentional, defense counsel told the jury:

> Well when you go back in your mind and think about that video of [defendant], one thing is certain, that [defendant] at no time said that he intentionally did anything to that little girl.
>
> It never happened. There was no such confession on that video. . . .
>
> Now the most that I can say that the defendant may have said on that video was that he adopted something that one of the detectives said, is it possible. His response, anything is possible, that in the

---

[6] Referring to a point in the statement where defendant admitted to "playing with her," the following colloquy ensued:

> [DEFENSE COUNSEL]: Prior to that, he's made no statement about doing anything. She gets scared. There's nothing here at all until after that about somebody suggests and one of you all suggested that it could have been a mistake, correct?
>
> [DETECTIVE RHOADS]: Yes.
>
> [COUNSEL]: And he repeated that. He said:
>
> "ANSWER: Well, it could have been a mistake."
>
> [RHOADS]: Yes.
>
> [COUNSEL]: That's not a confession is it?
>
> [RHOADS]: It's — in that context it's not.

A-5308-15T2

wrestling or whatever, you may have accidentally.

Well if you accept that as the confession, where they say -- and he does on the video say well it may have been accidentally, but then after that he says I don't think so. I don't do that in his best English, all right?

So he never says that I did this thing. He only adopts what the detectives had already put into his mind by saying well could -- is it possible that there was an accidental touching. So he said well maybe there was an accidental, but I don't think so. And I certainly never formed any intent in my mind to do so. If you remember that he said I never had any such an intent in my mind.

So the testimony of the defendant on that video is evidence in this court, as is the testimony of [Wisleidy] and the detective. That's all evidence that you have to consider.

The question is do you believe the defendant. In order to believe the defendant you have a couple of things you can look at. How he testified on the video, whether or not any of the things he said on that video were corroborated by the evidence.

In speaking of defense-witness testimony that defense counsel said corroborated her client's statement about the time he arrived home after lunch at TGI Friday's — and contradicted the victim's testimony — defense counsel argued, "So you can believe [defendant] on that video when he says, [']I was at [TGI] Friday. I got home around 4:00.['] I corroborate that evidence." He repeated to the jury, in speaking of the witnesses who testified about defendant's

character for truthfulness that they "can also believe [defendant's] testimony." And in advancing defendant's version of events, defense counsel said, "Well the testimony that you can believe is his." Defense counsel continued:

> So now we look back at this video. He says that's what happened that day. He went to the bathroom, came back out to the living room. She doesn't dispute any of that. She said she saw him in the hallway. Well she may have. He was coming from the bathroom. He went to his computer. She came and turned that computer on. I think you can find that from the totality of the evidence that's what happened.

Counsel's concluding remarks regarding defendant's statement continued that theme:

> Again, talking to you about the defendant's video, I want you to find that the defendant was truthful in his statements to the police officers. . . .
>
> . . . .
>
> . . . You should hang your hats on whether or not you find that the defendant was truthful. If you find that he was truthful and he didn't get home until 4:00, that he was at his computer working, that he was on his cell phone talking, that she turned it on for him, then you're going to have to believe him. You're going to have to find him not guilty.

The State in summation "disagreed" with defendant's profession that the touching was accidental, contending "the photographs [of the victim's vaginal and anal areas] and the

evidence suggest that he did it on purpose and he did it roughly and violently."

Under these circumstances, we conclude the failure to give the Hampton charge was not plain error. The defendant entreated the jury to believe his recorded statement that the touching was not intentional. Thus, the Hampton charge, which instructs the jury to disregard a statement if it finds the statement not credible, would have been antithetical to the proffered defense. Defendant's choice not to testify, but to rely on the "testimony" set forth in the recorded statement, militated against giving the jury instruction.

We will not consider defendant's attack on the sufficiency of the model jury charge and his proposed change to same in that those issues were not raised before the trial court. State v. Robinson, 200 N.J. 1, 20 (2009). Absent a trial court record regarding the research cited by defendant in his merits brief, the issues are not before us. State v. Herrera, 187 N.J. 493, 501 (2006).

We reject defendant's argument — made in his pro se supplemental brief — claiming a Miranda rights violation requiring suppression of his statement because he was not provided a Spanish-language interpreter during the recorded statement. The trial judge reviewed the recording and found defendant "responsive in

his answers and he's speaking English in reference to the statements that he's given." She noted a portion of the statement where defendant actually responded to the detective's question, "I understand what you're saying. I understand." After detailing much of the colloquy with the detectives, the judge "found [defendant] to be very responsive. When you watch the flow of the conversation it was responsive." The judge concluded:

> I'm more than satisfied that [defendant] understood and I want to make clear that this is not a case that I see where you have an individual who has Spanish as their native tongue and that questions are being presented to that individual and he's saying non-responsive things or . . . he's just giving a yes or a no, that's not what is before the [c]ourt.

The trial judge's findings, from our review of the statement,[7] are supported by sufficient credible evidence in the record and are entitled to our deference. State v. S.S., 229 N.J. 360, 379-381 (2017).

Defendant contends the seven-year state prison sentence imposed by the judge on the second-degree sexual assault count was excessive "[b]ecause [defendant] can be adequately punished for this offense with a lesser sentence." He does not contend the

---

[7] We reviewed the statement as set forth in the transcripts provided; a video recording of the statement was not part of the record.

trial judge's findings of aggravating factors two, N.J.S.A. 2C:44-1(a)(2) (youthful victim); three, N.J.S.A. 2C:44-1(a)(3) (risk of re-offense); and six, N.J.S.A. 2C:44-1(a)(9) (deterrence); or mitigating factors seven, N.J.S.A. 2C:44-1(b)(7) (no prior record); eight, N.J.S.A. 2C:44-1(b)(8) ("The defendant's conduct was the result of circumstances unlikely to recur"); and nine, N.J.S.A. 2C:44-1(b)(9) (the defendant's character and attitude indicate an unlikelihood of reoffending), were not based on competent credible evidence.

We review a "trial court's 'sentencing determination under a deferential standard of review.'" State v. Grate, 220 N.J. 317, 337 (2015) (quoting State v. Lawless, 214 N.J. 594, 606 (2013)). We may "not substitute [our] judgment for the judgment of the sentencing court." Lawless, 214 N.J. at 606. We must affirm a sentence if: (1) the trial judge followed the sentencing guidelines; (2) its findings of fact and application of aggravating and mitigating factors were "based upon competent, credible evidence in the record"; and (3) the application of the law to the facts does not "shock[] the judicial conscience." State v. Bolvito, 217 N.J. 221, 228 (2014) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).

We determine defendant's argument is without sufficient merit to warrant discussion in this written opinion. R. 2:11-3(e)(2).

The mid-range sentence does not shock our conscious and was meted in accordance with the sentencing guidelines.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5308-15T2