**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1146-18

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

KEVIN A. CARTER,

     Defendant-Appellant.

_____

Submitted on January 6, 2021 – Decided February 22, 2021

Before Judges Sumners and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 16-10-1840

Joseph E. Krakora, Public Defender, attorney for appellant (John Douard, Assistant Deputy Public Defender, of counsel and on the briefs).

Christopher J. Gramiccioni, Monmouth County Prosecutor, attorney for respondent (Maura K. Tully, Assistant Prosecutor, of counsel and on the brief).

Appellant filed a pro se supplemental brief.

PER CURIAM

A jury found self-represented defendant, Kevin Carter, guilty of various weapon offenses. Defendant was sentenced to an aggregate extended ten-year prison term as a persistent offender with a five-year period of parole ineligibility. Through his counsel, defendant argues:

> POINT I
>
> THE [TRIAL COURT] ABUSED [ITS] DISCRETION WHEN [IT] APPOINTED DEFENSE COUNSEL AS STANDBY, AND THEN PROCEEDED WITH THE TRIAL DESPITE THE AMBIGUOUS THREAT [DEFENDANT] WOULD FILE AN ETHICS COMPLAINT AGAINST STANDBY COUNSEL. U.S. CONST. AMENDS. VI, XIV; N.J. CONST. ART. 1[,] PARA. 10.
>
> POINT II
>
> THE DISCRETIONARY EXTENDED TERM FOR GUN POSSESSION – TEN YEARS WITH A FIVE-YEAR PAROLE DISQUALIFIER – WAS EXCESSIVE.

Defendant filed a pro se supplemental brief arguing:

> POINT I
>
> I ASK THAT YOU GRANT MY MOTION TO APPEAL FOR THE FOLLOWING REASONS[:]
>
> [A.] THE FIRST FALSITY IN THE AUGUST 17, 2016 POLICE REPORT OF OFFICER GIOVANNE AND FALSITY IN THE TESTIMONY IN THE

2

SUPPRESSION HEARING ABOUT HIS FIRST STATEMENT AT THE SCENE[.]

[B.] DURING CROSS EXAMINATION AT THE TRIAL THE HEAD CONDUCTOR GIANNA SALVATORE ADMITTED TO ILLEGALLY DETAINING THE DEFENDANT WITHOUT PROBABLE CAUSE BEING THAT HE WAS NOT A POLICE OFFICER OR AUTHORIZED TO DO SO.

POINT II

THE EXCLUSIVE RELIANCE UPON HEARSAY AND DOUBLE HEARSAY IN THE TRIAL MANDATES THE STATEMENTS SHOULD HAVE BEEN SUPPRESSED AND THE EVIDENCE SEIZED SHOULD HAVE BEEN FRUIT OF THE POISONIOUS TREE IN VIOLATION OF [DEFENDANT'S] FOURTH AMENDMENT RIGHT TO BE LEFT ALONE, FREE FROM ALL RESTRAINT AND FOURTEENTH AMENDMENT RIGHT TO DUE PROCESS UNDER THE NEW JERSEY STATE CONSTITUTION AND RIGHT TO A FAIR TRIAL[.]

[A.] THERE ARE 5 LEGAL ELEMENTS THE STATE MUST PROVE THAT [DEFENDANT] WAS IN POSSESSION OF THE WEAPONS.

POINT III

I ASK THAT YOU GRANT MY MOTION TO APPEAL FOR THE FOLLOWING REASONS[:]

[A.] [TRIAL JUDGE] ALLOWED IN HEARSAY EVIDENCE INTO THIS TRIAL, IDENTIFICATIONS THAT WERE HIGHLY SUGGESTIVE,

3

PREJUDICIAL, CONFUSING, AND A WASTE OF TIME.

POINT IV

I ASK THAT YOU GRANT MY MOTION TO APPEAL FOR THE FOLLOWING REASON:

[A.] AT THE TRIAL DURING THE EXAMINATION OF THE DEFENSE[] WITNESS KOREN JORDAN, THE JUDGE OBJECTED TO A QUESTION. SHE HAD THE PROSECUTOR AND STANDBY COUNSEL MEET HER AT SIDE BAR THEN OVERRULED ON HER OWN OBJECTION, WHICH IS PLAIN ERROR AND IT IMMEDIATELY PREJUDICED THE DEFENDANT IN VIOLATION OF THE DEFENDANTS RIGHT TO A FAIR TRIAL. STANDARDS OF REVIEW: PLAIN ERROR: JUDICIAL DISCRETION.

POINT V

I ASK THAT YOU GRANT MY MOTION TO APPEAL FOR THE FOLLOWING REASON:

[A.]  INEFFECTIVE-ASSISTANCE-OF-COUNSEL

[B.]  [TRIAL JUDGE] ALLOWED IN HEARSAY EVIDENCE INTO THIS TRIAL, IDENTIFICATIONS THAT WERE HIGHLY SUGGESTIVE, PREJUDICIAL, CONFUSING, AND A WASTE OF TIME.

Having considered the record and applicable law, we affirm.

I

A-1146-18

When a New Jersey Transit (NJT) train ended its route at the Long Branch train station shortly after midnight on August 17, 2016, head conductor Salvatore Gianna and assistant conductor Harry Giannuzzi walked through the train to confirm it was empty before the return trip. Neither conductor saw any bags left behind by departing passengers.

As the train left the station at 12:08 a.m., Giannuzzi walked down the aisle collecting tickets. A man later identified as defendant sat at the window seat of a three-passenger bench, with a woman sitting in the aisle seat. As Giannuzzi walked past defendant, he noticed two gun barrels protruding from a black garbage bag under defendant's seat. After Giannuzzi told Gianna about the guns, Gianna walked down the aisle and also saw the gun barrels sticking out of the black plastic bag under defendant's seat.

Gianna then asked defendant to accompany him to the train's "vestibule"[1] to talk. Defendant complied, and Gianna then asked him if the black plastic

---

[1] According to Wikipedia,

> [a] vestibuled train is a passenger train whose cars have enclosed vestibules at their ends, in contrast to the open platforms on early cars. Typically, a vestibule has doorways on either side to allow passenger entry and egress at stations, a door into the body of the car, and,

A-1146-18

bag was his. Defendant replied yes, stating it just contained laundry. Gianna retorted that the bag did not contain laundry, and that he had called the police and they would be waiting at the next station in Elberon. Defendant then told Gianna that the bag was not his.

When the train pulled into the next station, NJT Police Officers Christopher Giovannone and Zachary Kelliher were waiting along with other NJT officers and Long Branch police officers. Gianna led police to where the black garbage bag with guns was located, and the bag was removed from the train. Defendant told Giovannone that the bag was not his, but he was arrested based on "[t]he totality of the circumstances of everything that happened."

Defendant's denial was contradicted by a video from a Long Branch train station surveillance camera showing that, prior to the train leaving the station at 12:08, defendant, wearing the same clothing in which he was arrested, carried the black garbage bag onto the train. No one else was depicted in the surveillance video boarding the train matching defendant's description or carrying a black garbage bag.

---

at the car end, a doorway to allow access to the next car through a flexible gangway connection.

Wikipedia (last visited February 4, 2021, 11:01a.m.), https://en.wikipedia.org/wiki/Vestibuled_train.

A-1146-18

Defendant was subsequently indicted for second-degree unlawful possession of an assault firearm, N.J.S.A. 2C:39-5(f); two counts of fourth-degree unlawful transport of a firearm, N.J.S.A. 2C:39-9(d); two counts of second-degree certain persons not to have weapons, N.J.S.A. 2C:39-7b(1); third-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(c)(1); and fourth-degree possession of a prohibited weapon, N.J.S.A. 2C:39-3(f).

Months before his trial, defendant filed several motions with differing results. First, he moved to waive his right to counsel and represent himself. The trial judge granted the application, determining defendant "freely, knowingly, and voluntarily . . . is waiving his right to counsel and . . . wants to represent himself . . . ." The judge also appointed standby counsel to assist defendant. Second, he moved to suppress his statements to Gianna and to suppress the search and seizure of the black garbage bag and the guns. The judge denied his requests. After an evidentiary hearing, the judge found that defendant's statements were voluntary, the train conductor was not acting as an arm of the state, and the search and seizure of the weapons were proper under the plain view doctrine. The judge later denied defendant's reconsideration motion of the suppression rulings, finding that she considered all probative evidence and properly applied the law.

A-1146-18

Defendant's trial was bifurcated to enable the jury to separately determine the predicate facts required to support the certain person charges. As the trial was about to begin but before the jury had been sworn, defendant asked the court clerk if there was a "grievance procedure" to complain about an "ex parte communication" between his standby counsel and the prosecutor. Defendant claimed standby counsel asked him a question in front of the prosecutor which would have had him reveal his trial strategy. After excusing defendant from the courtroom, the judge spoke with standby counsel and the prosecutor. The judge then stated:

> I felt that I had to speak to counsel separately without [defendant] present, but this will be a record of what is going to be said. I am now very, very concerned, given what [defendant] has said, because it seems that he's going to or want to file some type of ethics grievance against [standby counsel] and if that's correct, then [standby counsel], in my opinion, is in a conflict situation with [defendant] and, therefore, [he] cannot be standby counsel and I have to now declare a mistrial.

Standby counsel responded that he was "not concerned that there's going to be any outcome vis-[à]-vis my license or my conduct in representing [defendant], or anyone else for that matter . . . we're all subject to ethics complaints." The judge eventually brought defendant back into the courtroom and decided there was no conflict between defendant and standby counsel, and

8

that neither she nor her staff would be permitted to give defendant legal advice about filing a grievance against standby counsel.

The jury found defendant guilty of second-degree unlawful possession of an assault firearm, third-degree unlawful possession of a weapon, and fourth-degree possession of a prohibited weapon (hollow nose bullets). At the second trial, the same jury found defendant guilty of the two certain persons charges. However, a different trial judge later granted defendant's motion for a new trial on the certain persons offenses because the judgment of conviction (JOC) that the State submitted had redacted his conviction; therefore, it could not prove that defendant had been convicted of an offense specifically enumerated in the certain persons statute.

Defendant was sentenced on the remaining convictions by the judge who granted his motion for a new trial on the certain persons convictions. The judge granted the State's motion under N.J.S.A. 2C:44-3(a), for a discretionary extended term because of defendant's prior record. On the second-degree unlawful possession of an assault firearm conviction, defendant was sentenced to a ten-year prison term with a five-year period of parole ineligibility, concurrent with a four-year prison term with forty-two months parole ineligibility on the third-degree unlawful possession of a weapon charge, and an

9

eighteen-months prison term for fourth-degree possession of a prohibited weapon.

## II

Defendant argues the trial judge abused her discretion and erred in appointing former defense counsel to serve as standby counsel and in allowing the trial to proceed without providing him a new standby attorney when he claimed that he wanted to file a grievance against standby counsel. He admits that he did not ask the judge for either form of relief. However, he argues that given his mistrust of defense counsel, the judge's initial appointment of standby counsel and failure to remove standby counsel impaired his ability to adequately represent himself because his subsequent distrust impaired their communication. McKaskle v. Wiggins, 465 U.S. 168, 178-79 (1984); Faretta v. California, 422 U.S. 806, 819 (1975). We are unpersuaded.

We agree with the State that because defendant never requested the appointment of different standby counsel at any stage of the proceedings, nor sought declaration of a mistrial, the "plain error" standard applies. Thus, we would only overturn defendant's conviction if the error were "clearly capable of producing an unjust result." R. 2:10-2; State v. Burns, 192 N.J. 312, 341 (2007).

A-1146-18

In Faretta, the United States Supreme Court recognized that "the trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct." 422 U.S. at 834 n.46. "[A] State may -- even over objection by the accused -- appoint a 'standby counsel' to aid the [defendant] if and when the [defendant] requests help, and to be available to represent the [defendant] in the event that termination of the defendant's self-representation is necessary." Ibid. "Standby counsel may be appointed to provide the defendant with advice and assistance and to facilitate communications with the court[,]" but there are constitutional limits. State v. Gallagher, 274 N.J. Super. 285, 296 (App. Div. 1994). "First, the pro se defendant is entitled to preserve actual control over the case he chooses to present, and second, participation by standby counsel should not be allowed to destroy the jury's perception that the accused is representing himself." Id. at 297 (citing McKaskle v. Wiggins, 465 U.S. 168, 178 (1984)). "In determining whether a defendant's Faretta rights have been respected, the primary focus must be on whether the defendant had a fair chance to present his case in his own way." McKaskle, 465 U.S. at 177.

There is nothing in the record remotely suggesting that defendant's Faretta rights were denied and thereby produced an unjust result in his conviction.

11                                                    A-1146-18

Defendant's claim that there should have been a mistrial after he asserted standby counsel partook in an "ex parte communication" with the prosecutor lacks any support in the record. An "ex parte communication" is defined as a comment made "between counsel or a party and the court when opposing counsel or party [was] not present." Communication, Black's Law Dictionary (11th ed. 2019). The alleged communication was between defendant and his standby counsel, not between opposing counsel and the judge. While defendant arguably meant that standby counsel shared a privileged communication with the prosecutor, the judge correctly decided this was a non-issue when defendant admitted that there was only a possibility that the prosecutor might have overheard the conversation. Moreover, a mistrial would have been inappropriate because the jury had not been sworn, and the trial had not commenced. State v. Veney, 409 N.J. Super. 368, 379-80 (App. Div. 2009).

Last, defendant fails to point out any time before or during the trial where his "distrust" of standby counsel affected his ability to represent himself and to have a fair trial. Thus, there was no reason for the judge to appoint new standby counsel.

III

Defendant argues the discretionary extended term imposed on him was excessive. Specifically, he asserts his sentence must be reversed because the judge

failed to consider the full sentencing range required by State v. Pierce, 188 N.J. 155 (2006), and placed too much emphasis on aggravating factor six, "[t]he extent of the defendant's prior criminal record and the seriousness of the offenses of which he has been convicted[,]" N.J.S.A. 2C:44-1(a)(6), without adequately taking into account how "mild" the offense was.  Defendant argues that because state law focuses primarily on the gravity of the offense, and not on the perceived risk that the offender presents, State v. Roth, 95 N.J. 334, 354-55 (1984), the judge should have sentenced him within the ordinary term range even though he meets the statutory requirements for an extended sentence under N.J.S.A. 2C:44-3(a).  He further argues the judge erred in not considering mitigating factor four, "substantial grounds tending to excuse or justify the defendant's conduct, though failing to establish a defense[,]" N.J.S.A. 44-1(b)(4),  because he suffers from depression and the incident on the train could have been related to his illness.  We are unpersuaded.

We defer to the trial judge's sentencing determination, State v. Fuentes, 217 N.J. 57, 70 (2014), and do not substitute our judgment for the trial court's judgment simply because we would have reached a different result, State v. Lawless, 214 N.J. 594, 606 (2013).  There is no dispute that defendant was eligible for a discretionary extended term as a persistent offender under N.J.S.A. 2C:44-3.  The judge properly applied his discretion to impose an extended term

13

sentence. Pierce, 188 N.J. at 161. The judge's factual findings and consideration of the sentencing factors were based on credible evidence in the record, and the sentence does not shock our judicial conscience. See State v. Bolvito, 217 N.J. 221, 228 (2014).

IV

As for the arguments raised in defendant's pro se supplemental brief, considering the record and relevant law, we conclude that they are "without sufficient merit to warrant discussion in a written opinion." R. 2:11-3(e)(2). We do add, however, that defendant's ineffective-assistance claim is more appropriately raised on a petition for post-conviction relief instead of direct appeal. State v. McQuaid, 147 N.J. 464, 484 (1997). See also State v. Preciose, 129 N.J. 451, 460 (1992) (recognizing a general policy against entertaining ineffective-assistance-of-counsel claims on direct appeal because they generally require examination of evidence outside the trial record). Accordingly, we do not address the merits of defendant's claim of ineffective assistance of counsel raised in this appeal.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-1146-18