**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3723-17

STATE OF NEW JERSEY,

    Plaintiff-Respondent/
Cross-Appellant,

v.

MUJAHIDEE ABDULLAH,

    Defendant-Appellant/
Cross-Respondent.

_____

Submitted May 4, 2021 – Decided June 25, 2021

Before Judges Fisher and Gilson.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Indictment No. 15-04-0594.

Joseph E. Krakora, Public Defender, attorney for appellant/cross-respondent (Stefan Van Jura, Assistant Deputy Public Defender, of counsel and on the brief).

Mark Musella, Bergen County Prosecutor, attorney for respondent/cross-appellant (Ian C. Kennedy, Assistant Prosecutor, of counsel and on the briefs).

Appellant filed a pro se supplemental brief.

PER CURIAM

On June 12, 2014, J.M. (Jay)[1] was driving on Interstate Route 80 when another vehicle pulled alongside his vehicle. Shots were fired, Jay was hit, and he later bled to death from his gunshot wound. Following an investigation, defendant Mujahidee Abdullah was charged with first-degree murder, N.J.S.A. 2C:11-3(a)(1) and (2), and numerous other offenses.

A jury acquitted defendant of murder but convicted him of the lesser-included offense of first-degree aggravated manslaughter, N.J.S.A. 2C:11-4(a)(1). The jury also convicted defendant of second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b)(1); and third-degree hindering his apprehension, N.J.S.A. 2C:29-3(b)(1). In a separate trial, defendant was convicted of second-degree certain persons not to possess a firearm, N.J.S.A. 2C:39-7(b).

On the aggravated manslaughter conviction, defendant was sentenced to an extended term of forty years in prison with thirty-four years of parole ineligibility as prescribed by the No Early Release Act (NERA), N.J.S.A. 2C:43-

---

[1] We use initials and fictitious names for the victim and witnesses to protect their privacy interests.

A-3723-17

7.2. The weapons convictions were merged with the aggravated manslaughter conviction. Defendant was sentenced to four years in prison for the hindering conviction and five years in prison with five years of parole ineligibility for the certain persons conviction. The hindering sentence was run consecutive to the aggravated manslaughter sentence and the certain persons sentence was run consecutive to the aggravated manslaughter and hindering sentences. Accordingly, in aggregate defendant was sentenced to forty-nine years in prison with thirty-nine years of parole ineligibility. The court also ordered defendant to pay restitution.

Defendant appeals from his convictions and sentence. He argues that (1) his constitutional right to confrontation was violated when inferential hearsay from a confidential informant was admitted; (2) he should have been granted an acquittal on the hindering charge; (3) there was a reversible error in the jury charge on the certain persons offense; (4) the prosecutor engaged in misconduct; (5) there were several errors in his sentencing; and (6) his due process rights were violated when the State withdrew a plea offer. The State cross-appeals, contending that the sentencing court erred in merging the conviction for unlawful possession of a weapon with the aggravated manslaughter conviction.

We affirm defendant's convictions, but remand for resentencing of the conviction for unlawful possession of a weapon and clarification on how the consecutive sentences are to run. At the resentencing the court is also to conduct an ability-to-pay hearing on the restitution request.

I.

The State alleges that defendant got angry with Jay because he thought his girlfriend, J.G. (Julie), and Jay were flirting at an exotic dance club (the Club). According to the State, defendant left the Club, got a gun, and came back. He then followed Jay's car, pulled alongside the car, and fired three bullets at Jay.

At trial, the State presented testimony from numerous witnesses, including Julie, people at the Club, detectives who investigated the shooting, and a medical examiner. The State also submitted surveillance footage depicting defendant's vehicle following Jay's vehicle, ballistic evidence, and defendant's videotaped admission that he shot at Jay's vehicle.

Jay operated a taxi service and one of his regular customers was N.C. (Nancy). Nancy testified that she was working at the Club on June 11, 2014, and Jay drove her to work. Nancy was scheduled to work until 2 a.m. on June 12, 2014, and at approximately 1 a.m. she saw Jay with a tall black male at the Club. The man was later identified as J.D. (Joe).

4

At approximately 1:45 a.m., Nancy finished work, went out to the Club's parking lot, and Jay picked her up in a black Yukon SUV. Joe was in the front passenger seat and Nancy sat in the rear seat. Jay drove to the Garden State Parkway, then got on Route 80 eastbound, traveling toward Hackensack. As Jay was driving on Route 80, Nancy heard what sounded like rocks hitting Jay's door. Jay then said, "I'm shot," pulled the SUV to the side of the highway and got out. Nancy saw he was bleeding.

Jay and Joe exchanged places, and Joe drove the SUV to a hospital. Jay was later pronounced dead. A medical examiner testified that Jay died from blood loss caused by a bullet entering Jay's pelvis and severing his iliac artery.

An examination of Jay's SUV revealed three bullet holes in the driver's door. A shooting reconstruction expert testified that the gun had been nearly perpendicular to Jay's SUV. Therefore, the vehicles were "near side by side or parallel" when the shots were fired.

Defendant became a suspect when investigators received a call from an FBI agent later that month. A New Jersey State Police detective then met with a confidential informant, who provided information concerning "a potential suspect who may have been involved in the shooting of [Jay]." Based on that

information, law enforcement personnel conducted database searches using defendant's name.

Those searches, in turn, revealed Julie was defendant's girlfriend. Investigators learned Julie had a distinctive tattoo on her left arm. Outdoor surveillance video from the Club showed that on June 12, 2014, a woman with that tattoo got into an Infiniti G35.

Law enforcement personnel thereafter identified the address where defendant and Julie lived, and obtained warrants to search the residence and the Infiniti vehicle. When the warrants were executed in July 2014, defendant and Julie were found at the residence and a silver Infiniti was parked out front.

Defendant and Julie were both taken into custody, given and waived their Miranda rights,[2] and gave statements. Portions of defendant's statement were played for the jury. Initially, defendant denied involvement in the shooting, but eventually he admitted to shooting at Jay's car. He acknowledged that he had been at the Club and felt Jay had "taunt[ed]" him and had "disrespect[ed his] girl." He also explained that he had left the Club, got a gun from someone he would not identify, and fired the gun out a window while driving. He later gave

---

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

A-3723-17

the gun back to the person he got it from. Law enforcement personnel never recovered the gun.

When defendant was indicted, Julie was also indicted for several narcotic crimes and hindering the apprehension of another. Before trial, she pled guilty to second-degree conspiracy to distribute heroin, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:35-5(a)(1), and agreed to testify against defendant.[3]

At trial, Julie testified that in June 2014 she was dating and living with defendant. On June 11, 2014, Julie, defendant, and one of defendant's friends went to the Club at approximately 9 p.m. Defendant drove them to the Club in his Infiniti sedan.

While they were sitting at the Club's bar, defendant asked Julie if she was flirting with a man seated nearby, who she later learned was Jay. She also testified that as they were leaving, defendant claimed that Jay or another man sitting with Jay tried to trip him.

After leaving the Club, defendant drove his friend home and got out of the car for several minutes to speak with his friend. Julie asked defendant to drive her to their apartment, but defendant told her he had to do something first.

---

[3] The narcotics charges against defendant were severed. They were later dismissed at the State's request after defendant was found guilty of aggravated manslaughter, weapons offenses, and hindering.

Defendant then drove back to the Club and, after waiting several minutes, began following a "black truck." Surveillance footage showed an Infiniti leaving the Club at 1:37 a.m. and returning at 1:45 a.m. Surveillance video of the Garden State Parkway showed Jay's SUV pass through an interchange at approximately 2:09 a.m. Seconds later, an Infiniti sedan went through the interchange in a different lane.

As defendant followed Jay's vehicle, Julie fell asleep in the reclined front passenger seat. She awoke to the sound of gunshots and saw defendant holding a gun in one hand and holding the steering wheel with the other. According to Julie, the gun was pointing out the front passenger window at the same black truck she had seen earlier. Defendant continued driving and later dropped Julie off at their apartment. Defendant did not immediately enter the apartment. Instead, he drove off and returned to the apartment sometime later.

Defendant elected not to testify at trial. During summations, his counsel argued that Jay's death was the result of reckless behavior rather than murder. Defense counsel also questioned Julie's credibility and suggested that she might have been the shooter. Counsel contended defendant confessed because he was under the influence of drugs and wanted to "protect" Julie.

8

## II.

Defendant now appeals from his convictions and his sentence. His appellate counsel presents five arguments:

POINT I: REFERENCES TO A NON-TESTIFYING WITNESS VIOLATED DEFENDANT'S CONFRONTATION RIGHT WHERE THE JURY WAS LEFT TO DRAW THE INESCAPABLE INFERENCE THAT THE WITNESS IDENTIFIED DEFENDANT AS THE SHOOTER AND PROVIDED POLICE WITH INFORMATION SUBSTANTIATING THAT CLAIM.

POINT II: THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO DISMISS THE HINDERING CHARGE BECAUSE THE JURY WAS PRESENTED WITH NO EVIDENCE THAT DEFENDANT CONCEALED OR DESTROYED A HANDGUN, AND HINDERING CANNOT BE BASED ON DEFENDANT'S REFUSAL TO IMPLICATE HIMSELF IN A CRIME.

POINT III: THE CERTAIN PERSONS CONVICTION SHOULD BE REVERSED BECAUSE THE JURY WAS NOT INSTRUCTED THAT IT MUST DISREGARD COMPLETELY ITS PRIOR VERDICT, AND THAT THE DEFENDANT WAS ENTITLED TO THE PRESUMPTION OF INNOCENCE.

POINT IV: DEFENDANT WAS DENIED DUE PROCESS AND A FAIR TRIAL BY PROSECUTORIAL ERROR IN THE FORM OF MISREPRESENTATION OF THE LAW ON MANSLAUGHTER.

A-3723-17

POINT V: A REMAND FOR RESENTENCING IS NECESSARY TO CORRECT THREE ERRORS THAT OCCURRED DURING THE SENTENCING PROCEEDING.

    A.    The Hindering and Aggravated Manslaughter Sentences Should Run Concurrently With Each Other.

    B.    Defendant Was Ordered to Serve a Less Restrictive Sentence Before a More Restrictive Sentence Without the Court Providing the Required Explanation.

    C.    Substantial Restitution Was Imposed in the Absence of an Inquiry into Defendant's Ability to Pay it.

Defendant also submitted a brief he prepared, presenting two additional arguments:

POINT I: APPELLANT ASSERTS THAT HIS RIGHT TO DUE PROCESS AND FUNDAMENTAL FAIRNESS WERE VIOLATED WHEN THE STATE WITHDREW FROM THE NEGOTIATED PLEA BARGAIN, U.S. CONST. AMEND XIV, § 1 AND ARTICLE 1 OF THE NEW JERSEY CONSTITUTION.

POINT II: THE TRIAL COURT ERRED WHEN IT CONSIDERED THE APPELLANT'S PENDING DRUG OFFENSES DURING SENTENCING AND FAILED TO CONSIDER DEFENDANT'S AGE AT HIS EARLIEST POSSIBLE RELEASE UPON THE 49 YEAR SENTENCE IMPOSED, U.S. CONST.

10

AMEND XIV § 1 AND ARTICLE 1 OF THE NEW
JERSEY CONSTITUTION.

The State cross-appeals, contending that the sentencing court erred by merging the unlawful possession of a weapon conviction with the aggravated manslaughter conviction. Accordingly, the State argues that we should remand for resentencing on the unlawful possession of a weapon conviction.

We discern no reversible error in any of defendant's convictions. We agree with the State that the unlawful possession of a weapon conviction should not have been merged and, therefore, we remand for resentencing on that conviction. At the resentencing, the court is to clarify whether the sentence on the certain persons conviction is to run consecutive to the aggravated manslaughter sentence, as well as the hindering sentence. In addition, the court is to conduct an ability-to-pay hearing on the restitution request. In all other respects, the sentence is affirmed.

A.    The Confrontation Issue

At trial, a detective testified that after being contacted by an FBI agent, he interviewed a person who provided information about "a potential suspect who may have been involved in the shooting of [Jay]." The detective was then asked: "What investigative steps did you take?" He responded: "We conducted database inquiries on the name Mujahideen [sic] Abdullah." Defendant argues

11

that that testimony denied him his constitutional right to confront the unidentified informant and created an inference that the informant implicated defendant in the shooting.

Both the United States Constitution and the New Jersey Constitution guarantee defendants the right to confront witnesses and to cross-examine accusers. U.S. Const. amend. VI; N.J. Const. art. I, ¶ 10; State v. Branch, 182 N.J. 338, 348 (2005). The admission of hearsay generally violates an accused's confrontation rights. Crawford v. Washington, 541 U.S. 36, 50-51 (2004). Nevertheless, "[t]he Confrontation Clause does not condemn all hearsay." Branch, 182 N.J. at 349 (citing Crawford, 541 U.S. at 36). If an out-of-court statement falls within a recognized exception to the hearsay rule or is non-testimonial, the right of confrontation is not infringed. Davis v. Washington, 547 U.S. 813, 821-22 (2006); see also State v. Williamson, ___ N.J. ___, ___ (2021) (slip op. at 31-32) (holding a dying declaration admissible under N.J.R.E. 804(b)(2) does not violate the Confrontation Clause).

"It is well settled that the hearsay rule is not violated when a police officer explains the reason he approached a suspect or went to the scene of the crime by stating that he did so 'upon information received.'" State v. Bankston, 63 N.J. 263, 268 (1973) (quoting McCormick on Evidence § 248 (2d ed. 1972)). That

explanation is admissible for the purpose of showing "the officer was not acting in an arbitrary manner or to explain his subsequent conduct." Ibid. However, when the officer repeats "what some other person told him concerning a crime by the accused," the hearsay rule is violated, and the admission of that testimony violates the Confrontation Clause. Id. at 268-69.

Moreover, an officer may not "state[] or suggest[] that some other person provided information that linked the defendant to the crime." Branch, 182 N.J. at 351 (citing Bankston, 63 N.J. at 268-69); see also State v. Medina, 242 N.J. 397, 415-16 (2020). Accordingly, when a law enforcement witness implies that a non-testifying witness "possesses superior knowledge, outside the record, that incriminates the defendant," the Confrontation Clause is violated. Branch, 182 N.J. at 351; see also Medina, 242 N.J. at 415-16 (explaining limitation is meant to avoid the implication officer's testimony is "worthy of greater weight").

The State filed an in limine motion seeking permission to question the detective about information obtained from the confidential informant. At the hearing, the State represented that the following exchange would be presented to the jury:

> QUESTION: Detective, did you meet with a person who provided certain information to you pertaining to the facts/circumstances, of a potential suspect?

13

ANSWER:  Yes.

QUESTION:  Was that information, in turn, provided to [another detective]?

ANSWER:  Yes.

QUESTION:  Did you, [the other detective], and the rest of the Investigation Team, then, proceed to investigate based on the information provided?

The trial court correctly ruled that the proposed testimony was admissible and did not violate the Confrontation Clause.

At trial, however, the questioning went beyond what was approved at the in limine hearing.  After soliciting testimony consistent with the court's ruling, the following exchange took place:

[QUESTION:]  What investigative steps did you take?

[ANSWER:]  We conducted database inquiries on the name Mujahideen [sic] Abdullah.

[QUESTION:] Okay.  And what was the result of those inquiries?

At that point, defense counsel requested a sidebar and objected to the additional question.  The prosecutor incorrectly argued that she had asked the same question the court had approved on the in limine motion.  The trial court then overruled the objection.

14

We hold that the extra question could have suggested to the jury that defendant's identity was provided by an unnamed, non-testifying witness. It is therefore logical to conclude that the mention of a meeting with a confidential informant led the jury to believe that the informant possessed "superior knowledge, outside the record, that incriminate[d] the defendant." Branch, 182 N.J. at 351. Indeed, the State now "acknowledges that the detective's testimony about a database inquiry on defendant's name made the inference more focused, and that defense counsel did not agree to that specific testimony before trial."

Nevertheless, we hold that the error was harmless.

> The test of whether an error is harmless depends upon some degree of possibility that it led to an unjust verdict. The possibility must be real, one sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached.
>
> [Bankston, 63 N.J. at 273 (citing State v. Macon, 57 N.J. 325, 335-36 (1971)).]

"The question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." Fahy v. Connecticut, 375 U.S. 85, 86-87 (1963). To make a determination, an appellate court must "review the facts of the case and the evidence adduced at trial." Id. at 87.

The State's evidence at trial was strong. Defendant admitted to shooting at Jay. Julie's testimony provided details on the motive and events leading up

15

to the shooting. She also described her awakening to the sound of gunshots and observation of defendant pointing a gun at another vehicle. The State corroborated Julie's testimony with surveillance video showing defendant's car outside the Club and following Jay's vehicle.

Accordingly, the one extra question asked of the detective does not give rise to the possibility that it caused an unjust verdict. Defendant suffered no prejudice from the detective's testimony, and we discern no basis to reverse the jury verdict.

B.    The Hindering Charge

At the close of the State's case, defendant moved to dismiss the hindering charge, contending there was no evidence that defendant possessed the gun, let alone concealed it to avoid apprehension. The trial court denied the motion and the jury thereafter convicted defendant of hindering his apprehension. Defendant now argues that the trial court erred in denying his motion for an acquittal on the hindering charge. We disagree.

The question on a motion for acquittal is

> whether, viewing the State's evidence in its entirety, be that evidence direct or circumstantial, and giving the State the benefit of all its favorable testimony as well as all of the favorable inferences which reasonably could be drawn therefrom, a reasonable jury could find guilt of the charge beyond a reasonable doubt.

16

[State v. Reyes, 50 N.J. 454, 458-59 (1967) (citation omitted).]

An appellate court's review of a motion for acquittal "is limited and deferential." State v. Reddish, 181 N.J. 553, 620 (2004).

There are three elements to the crime of hindering. The State must prove that defendant (1) knew he might be charged with a crime; (2) suppressed, either by concealment or destruction, evidence of the crime which could have led to charges against him; and (3) acted with purpose to hinder his apprehension or the investigation. N.J.S.A. 2C:29-3(b)(1); Model Jury Charges (Criminal), "Hindering One's Own Apprehension or Prosecution (N.J.S.A. 2C:29-3b)" (rev. May 12, 2014).

The State presented adequate evidence of defendant's concealment of the gun. Defendant admitted that he had obtained a gun and used it to shoot at Jay. The jury also heard Julie testify how defendant left the Club, spoke with his friend outside his car, and that he later returned to the Club to follow Jay's vehicle. Julie also testified that after the shooting, defendant dropped her off at their apartment, then drove off. Based on that evidence, the jury could reasonably infer that defendant disposed of the gun after dropping Julie off and did so to conceal his involvement in the shooting.

Defendant argues that the only evidence of his concealment of the gun was his refusal to disclose who he got the gun from and where the gun was during his statement. In making that argument, defendant relies on the trial court's reasoning in denying the motion for acquittal. Defendant argues that using his own refusal to disclose the location of the gun against him violates his constitutional right against self-incrimination. We reject defendant's argument as a misconstruction of the record.

We do not agree with defendant's contention that the trial court based the denial of the motion solely on defendant's own statements. Nevertheless, even if the trial court used that reasoning, we are not bound by it. State v. Dekowski, 218 N.J. 596, 608 (2014) (recognizing appellate courts conduct a de novo assessment of an acquittal motion). Instead, we look at the record and, as already pointed out, there is evidence beyond defendant's refusal to disclose the gun's location that allowed the jury to infer that defendant concealed or disposed of the gun to hinder his own apprehension.

C. The Jury Charge on the Certain Persons Offense

Defendant argues that the certain persons conviction should be reversed because the jury was not instructed to disregard completely its prior verdict and was not instructed that defendant was entitled to a presumption of innocence.

Defendant did not object to the jury instructions and, therefore, we review this issue for plain error. State v. Munafo, 222 N.J. 480, 488 (2015); R. 2:10-2. We discern no plain error.

Under the plain error standard, "we disregard any alleged error 'unless it is of such a nature as to have been clearly capable of producing an unjust result.'" State v. Funderburg, 225 N.J. 66, 79 (2016) (quoting R. 2:10-2). Plain error in the context of jury charges is "[l]egal impropriety in the charge prejudicially affecting the substantial rights of the defendant and sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result." State v. Camacho, 218 N.J. 533, 554 (2014) (alteration in original) (quoting State v. Adams, 194 N.J. 186, 207 (2008)).

"The charge must be read as a whole in determining whether there was any error." State v. Torres, 183 N.J. 554, 564 (2005) (citing State v. Jordan, 147 N.J. 409, 422 (1997)). In addition, the error should be evaluated "in light 'of the overall strength of the State's case.'" State v. Walker, 203 N.J. 73, 90 (2010) (quoting State v. Chapland, 187 N.J. 275, 289 (2006)). Furthermore, counsel's failure to object to jury instructions "gives rise to a presumption that [they] did

not view [the charge] as prejudicial to [their] client's case." State v. McGraw, 129 N.J. 68, 80 (1992).

In State v. Ragland, our Supreme Court set forth procedures to be followed when a defendant faces charges of unlawful possession of a weapon and certain persons not to possess a weapon simultaneously. 105 N.J. 189, 193-94 (1986). The charges must be tried separately and "the second jury must clearly be instructed that it remains the State's burden to prove beyond a reasonable doubt, regardless of the prior conviction, that defendant possessed a weapon and, again beyond a reasonable doubt, that at that time he was a convicted felon." Id. at 194. If the same jury is used, "[i]t becomes essential . . . that the jury be instructed in no uncertain terms to consider anew the evidence previously admitted but to disregard completely its prior verdict." Id. at 195. Accordingly, defendant is "entitled to the presumption of innocence and, as a consequence of that, to an instruction that each and every material fact that makes up the crime, including obviously the fact of possession, must be proven by the State beyond a reasonable doubt." Ibid.

In this case, there was a bifurcated trial. After the jury rendered its verdict on all the charges except the certain persons charge, the same jury returned to consider that additional charge. The trial court conducted a charge conference

on the certain persons offense and reviewed the proposed charge with counsel. After minor adjustments were made, defense counsel agreed to the charge.

The day after the first verdict, the trial judge instructed the jury on the certain persons not to possess a weapon charge, telling them that the State must prove the three elements "beyond a reasonable doubt." The court then detailed each of those elements and repeatedly reminded the jury that the State had the burden of proving each element beyond a reasonable doubt. Concerning the possession element, the trial court instructed the jury:

> On the issue of possession, although you may consider evidence previously introduced, the State must prove, beyond a reasonable doubt, that the defendant possessed the handgun before you find the defendant guilty of this charge. In deciding whether the State has carried its burden of proof, you must set aside your previous verdict on this question and begin your deliberations anew.
>
> In summary, the State must prove three elements beyond a reasonable doubt. First that there was a firearm; second, that the defendant knowingly purchased, owned, possessed, or controlled the firearm on June 12, 2014; and third, that the defendant is a person who previously has been convicted of an enumerated offense. If you state - - if you find that the State has proven beyond a reasonable doubt each of these elements, then you must find the defendant guilty. On the other hand, if you find that the State has failed to prove any of these elements beyond a reasonable doubt then you must find the defendant not guilty.

21

The trial judge did not include the section of the model jury charge in effect at the time, which states:

> You must disregard completely your prior verdict, and consider anew the evidence previously admitted on the possession of a weapon. The defendant is entitled to the presumption of innocence. Each and every material fact that makes up the crime, including the element of possession, must be proven by the State beyond a reasonable doubt.
>
> [Model Jury Charges (Criminal), "Certain Persons Not to Have Any Firearms (N.J.S.A. 2C:39-7(b)(1))" (rev. Feb. 12, 2018).]

Having reviewed the full charge in context, we discern no plain error. The trial court instructed the jury to consider the evidence anew and emphasized that the State had to prove each of the three elements beyond a reasonable doubt. Defendant stipulated that he had prior convictions that prohibited him from possessing a weapon. Accordingly, the only issue was whether defendant possessed the firearm on June 12, 2014. The jury was explicitly instructed that it had to disregard its prior verdict and consider that issue anew at the second trial.

D.    The Alleged Prosecutorial Misconduct

Defendant contends that he was denied due process and a fair trial when the prosecutor misrepresented the law on manslaughter in her closing arguments.

22

Specifically, defendant contends that the prosecutor "created artificial categories of liability" when she gave examples of conduct that she believed demonstrated recklessness. We are not persuaded by this argument.

"[P]rosecutors in criminal cases are expected to make vigorous and forceful closing arguments to juries." State v. Frost, 158 N.J. 76, 82 (1999) (citing State v. Harris, 141 N.J. 525, 559 (1995)). They are "afforded considerable leeway in closing arguments as long as their comments are reasonably related to the scope of the evidence presented." Ibid. (citations omitted). Prosecutors "may comment on facts in the record and draw reasonable inferences from them," State v. Lazo, 209 N.J. 9, 29 (2012), but they "should not make inaccurate legal or factual assertions," Reddish, 181 N.J. at 641 (quoting State v. Smith, 167 N.J. 158, 178 (2001)).

In her closing arguments, the assistant prosecutor posited several "variations" of the facts presented at trial concerning recklessness. Defense counsel did not object to those comments. Read in full context, we discern no prejudicial misconduct by the prosecutor. The factual variations the prosecutor discussed were fair comments and were not likely to have misled the jury on the governing law.

Because defense counsel did not object to the prosecutor's comments, we review this issue for plain error. State v. McGuire, 419 N.J. Super. 88, 139-40 (App. Div. 2011); R. 2:10-2. "Generally, if no objection was made to the [allegedly] improper remarks, the remarks will not be deemed prejudicial." State v. Timmendequas, 161 N.J. 515, 576 (1999). We discern no plain error.

Importantly, the trial court clearly instructed the jury on the governing law concerning murder, aggravated manslaughter, and reckless manslaughter. The court also correctly instructed the jurors that they were to follow the court's instructions and not be guided by any description of law given by counsel.

E.    The Sentence

Defendant claims the court committed several errors in sentencing him. His counsel argues that (1) the hindering and aggravated manslaughter sentences should have been run concurrently; (2) the court failed to explain why the certain persons sentence was run consecutively to the aggravated manslaughter and hindering sentence, rather than concurrently; and (3) he should be afforded an ability-to-pay hearing on restitution. In a supplemental brief submitted by defendant, he argues (4) the court improperly considered the drug charges that were later dismissed; and (5) the court erred in finding aggravating factors one, five, six, and nine. In its cross-appeal, the State contends that the court

24

improperly merged the conviction for possession of a handgun into the aggravated manslaughter conviction.

We review sentencing determinations under a deferential standard. State v. Grate, 220 N.J. 317, 337 (2015) (quoting State v. Lawless, 214 N.J. 594, 606 (2013)). We "do[] not substitute [our] judgment for the judgment of the sentencing court." Lawless, 214 N.J. at 606 (first citing State v. Cassady, 198 N.J. 165, 180 (2009); and then citing State v. O'Donnell, 117 N.J. 210, 215 (1989)). Instead, we will affirm a sentence unless

> (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) "the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience."
>
> [State v. Miller, 237 N.J. 15, 28 (2019) (alteration in original) (quoting State v. Fuentes, 217 N.J. 57, 70 (2014)).]

1. The Consecutive Sentences

When sentencing a defendant for multiple offenses, "such multiple sentences shall run concurrently or consecutively as the court determines at the time of sentence." N.J.S.A. 2C:44-5(a). In State v. Yarbough, 100 N.J. 627, 643-44 (1985), our Supreme Court established criteria that a sentencing court

must consider when deciding whether to impose consecutive sentences. Namely, the court must evaluate whether

> (a) the crimes and their objectives were predominantly independent of each other;
>
> (b) the crimes involved separate acts of violence or threats of violence;
>
> (c) the crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior;
>
> (d) any of the crimes involved multiple victims;
>
> (e) the convictions for which the sentences are to be imposed are numerous;
>             . . . .
>
> [Id. at 644.]

"The Yarbough factors are qualitative, not quantitative; applying them involves more than merely counting the factors favoring each alternative outcome." State v. Cuff, 239 N.J. 321, 348 (2019) (first citing State v. Molina, 168 N.J. 436, 442-43 (2001); and then citing State v. Carey, 168 N.J. 413, 427-28 (2001)).

"When a sentencing court properly evaluates the Yarbough factors in light of the record, the court's decision will not normally be disturbed on appeal." State v. Miller, 205 N.J. 109, 129 (2011) (citing Cassady, 198 N.J. at 182). Nevertheless, when a sentencing court fails to explain its decision to impose

26

consecutive sentences, a remand is generally required for the judge to provide an explanation on the record. Ibid. (citations omitted); see also State v. Torres, ___ N.J. ___, ___ (2021) (slip op. at 26).

The trial court imposed an aggregate prison sentence of forty-nine years with periods of parole ineligibility. Defendant was sentenced to forty years in prison subject to NERA on the aggravated manslaughter conviction. He was also sentenced to four years in prison for the hindering conviction and that sentence was to run consecutive to the aggravated manslaughter sentence. In addition, on the certain persons conviction, defendant was sentenced to five years in prison with five years of parole ineligibility and that sentence was to run consecutive to the aggravated manslaughter and hindering convictions.

In imposing those sentences, the trial court cited to and analyzed the Yarbough factors. The trial court also explained why it was imposing consecutive sentences for those three separate crimes. We discern no abuse of discretion, except there is a need for clarification. The Judgment of Conviction states that the sentence on the certain person conviction is to run consecutive to both the sentences for aggravated manslaughter and hindering. The court did not explain that one aspect of the sentence. Indeed, it is not clear to us that the court meant to run the certain persons sentence consecutive to the hindering

sentence. See State v. Ellis, 346 N.J. Super. 583, 594-97 (App. Div. 2002) (holding sentencing court's decision to require defendant to serve a less restrictive sentence before a more restrictive sentence is not illegal "when accompanied by specific findings"). Accordingly, we remand for a clarification or, if necessary, a resentencing on that issue.

Defendant also argues that the court did not consider the overall length of time he would serve in prison without parole eligibility. The trial judge's lengthy and careful analysis of defendant's sentence rebuts that argument.

2.    Aggravating and Mitigating Factors

The court found aggravating factor one, "[t]he nature and circumstances of the offense," N.J.S.A. 2C:44-1(a)(1), applied because "[t]he victim was a total stranger to the defendant" and defendant pursued Jay "[b]ecause of some perceived slight to [his] ego." Accordingly, the court found defendant's actions "particularly egregious." The sentencing court also found aggravating factors three, the risk of re-offense, N.J.S.A. 2C:44-1(a)(3); five, the likelihood of defendant's involvement in organized crime, N.J.S.A. 2C:44-1(a)(5); six, defendant's criminal history, N.J.S.A. 2C:44-1(a)(6); and nine, the need for deterrence, N.J.S.A. 2C:44-1(a)(9). The sentencing court adequately identified the facts supporting each of those findings.

The court also considered the mitigating factors and rejected defendant's arguments for factors eight, nine, and ten but found mitigating factor eleven, that imprisonment would be a hardship on defendant's minor child, N.J.S.A. 2C:44-1(b)(11). The court then found that the aggravating factors significantly outweighed the mitigating factors.

We discern no abuse of discretion in those findings. Moreover, the findings were based on competent credible evidence in the record and the sentence imposed does not shock our judicial conscience. State v. Bolvito, 217 N.J. 221, 228 (2014).

### 3. The Merger

The weapons convictions were merged with the aggravated manslaughter conviction. The State contends that it was an error to merge the conviction for possession of a weapon without a permit. We agree. "Because the gravamen of unlawful possession of a handgun is possessing it without a permit, it does not merge with a conviction for a substantive offense committed with the weapon." State v. DeLuca, 325 N.J. Super. 376, 392-93 (App. Div. 1999) (citations omitted), aff'd as modified, 168 N.J. 626 (2001); see also State v. Tate, 216 N.J. 300, 306 (2013) (outlining standards for merger of convictions). Accordingly,

we remand for a resentencing on the conviction for unlawful possession of a weapon.

4.    Restitution

In imposing the sentence, the court granted a request for restitution and ordered restitution in the amount of $7,874.15.  The court did not, however, conduct a hearing on defendant's ability to pay.  Accordingly, we vacate the restitution award and remand for an ability-to-pay hearing.  "A court imposing restitution must 'conduct at least a summary hearing' to determine the ability to pay."  RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 477 (2018) (quoting State v. Paladino, 203 N.J. Super. 537, 547 (App. Div. 1985)); see also N.J.S.A. 2C:44-2(a) to (c) (setting forth criteria to be considered when sentencing defendant to pay restitution in addition to term of imprisonment).

5.    Defendant's Other Sentencing Arguments

We find no merit in defendant's other sentencing arguments.  Indeed, those arguments lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(2).

F.      The Plea Offer

Finally, defendant contends that his rights to due process and fundamental fairness were violated when the State withdrew a proposed plea offer. We reject this argument for two reasons.

First, the argument was never made to the trial court. We discern no reason to consider the argument for the first time on this appeal. State v. Robinson, 200 N.J. 1, 20 (2009) (citation omitted) (recognizing appellate courts generally "will decline to consider questions or issues not properly presented to the trial court" with few exceptions); see also State v. Witt, 223 N.J. 409, 419 (2015) (holding that it would be "unfair, and contrary to our established rules" to address new issues raised for the first time on appeal).

Second, the record does not establish that the State made a binding plea offer. Instead, the best that can be discerned is that there were plea discussions but there was never a formal plea agreement approved by the court. State v. Williams, 277 N.J. Super. 40, 46-47 (App. Div. 1994) (explaining that a plea agreement is not binding until the parties agree and the court approves it); see generally R. 3:9-3.

G.    Summary

In summary, we affirm all of defendant's convictions.  We remand for resentencing of the conviction for unlawful possession of a weapon and clarification of how the consecutive sentences are to run on the conviction for certain persons not to possess a weapon.  At the resentencing, the court is also to conduct an ability-to-pay hearing on the restitution request.  In all other respects, the sentence is affirmed.

Affirmed in part and remanded for resentencing in part.  We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-3723-17