# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0824-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

KELVIN WILLIAMS,

    Defendant-Appellant.

_____

        Submitted January 22, 2026 – Decided March 3, 2026

        Before Judges Currier and Berdote Byrne.

        On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Indictment No. 21-08-0852.

        Jennifer N. Sellitti, Public Defender, attorney for appellant (Stefan Van Jura, Assistant Deputy Public Defender, of counsel and on the brief).

        LaChia L. Bradshaw, Burlington County Prosecutor, attorney for respondent (Nicole Handy, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Kelvin Williams appeals from his convictions and sentence following a jury verdict finding him guilty of second-degree sexual assault and first-degree aggravated sexual assault. Defendant contends the trial court committed plain error by failing to give a sua sponte jury instruction on the defense of consent. We disagree and find no plain error as the trial court's instructions sufficiently addressed consent.

However, because the sentencing court did not provide sufficient reasons as to the application of mitigating factor eight, and did not address whether the second-degree sexual assault conviction should merge into the first-degree aggravated sexual assault conviction, we vacate the sentence and remand for resentencing.

I.

On June 8, 2019, L.S.[1] and defendant were both present at a social gathering at a mutual friend's residence in Moorestown, New Jersey. L.S. testified she consumed a substantial amount of alcohol as the evening progressed. She estimated her intoxication at a "seven or eight" on a ten-point scale when defendant arrived at the residence around 9:00 p.m. At approximately 1:30 a.m., a group from the party, including L.S. and defendant,

_____

[1] We use initials to protect the privacy of the victim. See R. 1:38-3(c)(12).

went to a bar where L.S. had "a few" more beers. After the bar closed at approximately 3:00 a.m., the group returned to the Moorestown residence and continued drinking and socializing on the back deck. By that time, L.S. estimated her level of intoxication as "eight or nine" out of ten.

As guests began leaving or going to bed, L.S. went to the basement, where she fell asleep alone on a couch at approximately 4:00 or 4:30 a.m. L.S. recalled vague, dreamlike memories of someone being present with her on the couch, of being pushed forward, and of her face being pressed into a pillow, but testified she was unable to respond or physically resist.

When L.S. awoke later at approximately 12:30 p.m., she discovered she was naked from the waist down, with her shorts and underwear lying on the floor nearby. She described experiencing a moment of panic, quickly dressed, and went to the basement bathroom, where she observed blood on her underwear and felt burning in her vaginal area. L.S. left without interacting with anyone.

The owner of the residence testified he woke up at approximately 6:30 a.m., went to the basement, and saw L.S. sleeping on the couch covered with a blanket. His roommate testified he also woke at approximately 6:30 a.m. and saw L.S. alone in the basement covered with the blanket. About two hours later, he returned to the basement and observed defendant sleeping on a separate couch

3

positioned perpendicular to the one where L.S. was sleeping. Both testified they did not witness any sexual activity.

That day, L.S. went to the Moorestown Township Police Department (MPD) to report she had been sexually assaulted. She was interviewed by Detective Jason Burk. After the interview, L.S. provided Detective Burk with the clothing she had worn and then went to the hospital, where a sexual assault examination (SANE) was conducted. The examination included external genitalia swabs, vaginal swabs, cervical swabs, anal swabs, and rectal swabs, as well as a swab of her breasts. The SANE nurse documented both external and internal vaginal injuries, including two small tears on the external genitalia and a tear inside the vaginal wall.

Laboratory testing of the swabs from the SANE examination as well as L.S.'s clothing detected the presence of blood and sperm, stipulated to at trial. New Jersey State Police Forensic Scientist Christine Bless testified defendant was the source of the DNA profile located in the samples. The parties also stipulated ethyl alcohol appeared in L.S.'s urine but was absent from her blood, showing she had previously consumed alcohol but was not intoxicated when the samples were collected.

4

After interviewing L.S., Detective Burk went to the Moorestown residence and interviewed all male attendees of the party, including defendant, each of whom consented to provide a DNA swab. Defendant provided Burk with a general narrative of the night and morning and said he had slept upstairs in a chair in the living room. Detective Burk then entered the basement and observed a bloodstain on the couch where L.S. had told police she slept.

Defendant gave a second statement to Detective Burk on June 10, 2019, in which he again denied having had sexual intercourse with L.S. He stated he and L.S. had kissed years ago and he would have "loved to hook up with her[,] but she always said no." He also stated he went to the basement at approximately 6:00 a.m. because he had to use the bathroom and then decided to sleep on the couch adjacent to where L.S. was sleeping. He reported speaking with L.S. briefly when she woke up, but denied "anything happening" between the two.

Defendant's testimony at trial differed from what he told Burk during either statement. At trial, defendant testified he had engaged in consensual sexual intercourse with L.S. during the early morning of June 9, 2019. He admitted to lying in his statements to the police because he "panicked" and "didn't want to get arrested for something that got misconstrued." Defendant testified he initially tried to fall asleep in a chair upstairs but went to the

5

basement because the upstairs bathroom was occupied. When he entered the basement, L.S. was awake on the couch under a blanket and told him she was trying to sleep. After using the bathroom, defendant asked L.S. if he could cuddle with her. She responded, "sure," and he laid on the couch with her under her blanket. He testified they began touching and kissing, eventually leading her to remove her shirt, pants, and underwear. He stated he then penetrated her vagina with his finger, performed oral sex on her, and then engaged in vaginal intercourse. He testified L.S. did not resist and was a willing participant. L.S. testified she did not consent to sexual intercourse with defendant at any time that evening or morning, nor did she indicate any desire to do so.

A Burlington County Grand Jury returned an indictment charging defendant with second-degree sexual assault, N.J.S.A. 2C:14-2c(1) (count one), and first-degree aggravated sexual assault, N.J.S.A. 2C:14-2a(7) (count two). At trial, the jury found defendant guilty on both counts. Defendant was sentenced to seven years in prison with three years of parole supervision for count one, and a concurrent sentence of fifteen years' imprisonment with five years of parole supervision for count two, both subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. The court found N.J.S.A. 2C:44-1(a)(2)

A-0824-23

(aggravating factor two) and N.J.S.A. 2C:44-1(a)(9) (aggravating factor nine) applied, as well as N.J.S.A. 2C:44-1(b)(7) (mitigating factor seven).

On appeal, defendant raises the following contentions:

> POINT I:  IT WAS PLAIN ERROR FOR THE TRIAL COURT TO FAIL TO ISSUE A COMPLETE CHARGE ON THE CONSENT DEFENSE WHEN CONSENT WAS THE SOLE ISSUE AT TRIAL. (Not Raised at Trial)
>
> POINT II:  THE FIFTEEN-YEAR NERA SENTENCE WAS MANIFESTLY EXCESSIVE AND NOT JUSTIFIABLE BASED ON A PRINCIPLED APPLICATION OF THE AGGRAVATING AND MITIGATING FACTORS.

## II.

We begin our review by recognizing "[w]e review for plain error the trial court's obligation to sua sponte deliver a jury instruction when a defendant does not request it and fails to object at trial to its omission." State v. Alexander, 233 N.J. 132, 141-42 (2018); see also State v. Bragg, 260 N.J. 387, 404 (2025). "Under that standard, a reviewing court must 'disregard any alleged error unless it is of such a nature as to have been clearly capable of producing an unjust result.'" Ibid. (quoting State v. Funderburg, 225 N.J. 66, 79 (2016)) (internal quotation marks omitted); R. 2:10-2. "Reversal is justified only when the error was 'sufficient to raise a reasonable doubt . . . as to whether the error led the jury

7

to a result it otherwise might not have reached.'" Ibid. (quoting Funderburg, 225 N.J. at 79) (internal quotation marks omitted). Moreover, "[a]n appeal centered around jury instructions requires courts to read the charge as a whole, and not just the challenged portion, to determine its overall effect." State v. A.L.A., 251 N.J. 580, 591 (2022). "The error must be considered in light of the entire charge and must be evaluated in light 'of the overall strength of the State's case.'" State v. Walker, 203 N.J. 73, 90 (2010) (quoting State v. Chapland, 187 N.J. 275, 289 (2006)).

Defendant argues the jury instructions regarding consent were incomplete and a separate model jury charge on consent should have been given. Because defendant neither requested a more comprehensive consent instruction nor objected to the charge as given, we review for plain error. See Bragg, 260 N.J. at 404.

"Appropriate and proper jury instructions are essential for a fair trial." A.L.A., 251 N.J. at 591. A jury charge must "correctly state the applicable law, outline the jury's function and be clear in how the jury should apply the legal principles charged to the facts of the case at hand." Id. at 591-92 (quoting Est. of Kotsovska v. Liebman, 221 N.J. 568, 591 (2015)) (internal quotation marks omitted). Jury charges must be tailored to the specific facts of the case. See

A-0824-23

State v. Savage, 172 N.J. 374, 389 (2002) (pointing out that New Jersey courts "regularly have noted the importance of tailoring the jury charge to the facts of the case").

The jury instructions the trial court gave for both sexual assault and aggravated sexual assault fully addressed consent. As to sexual assault the trial court instructed, in pertinent part:

> The third element that the State must prove beyond a reasonable doubt, is that the defendant used physical force.
>
> Physical force is defined as the commission of the act of sexual penetration without the victim's freely and affirmatively giv[en] permission to the specific act of penetration alleged to have occurred. You must decide whether the defendant's alleged act of penetration was undertaken in circumstances that led the defendant reasonably to believe that the victim had freely given affirmative permission to the specific act of sexual penetration. Simply put, affirmatively given permission means the victim did or said something which would lead a reasonable person to believe she was agreeing to engage in the act of sexual penetration, and freely given permission means the victim agreed, of her own free will, to engage in the act of sexual penetration. Freely and affirmatively given permission can be indicated either through words or through actions that, when viewed in the light of all the surrounding circumstances, would demonstrate to a reasonable person that affirmative and freely given permission for the specific act of sexual penetration had been given.

A-0824-23

Persons need not, of course, expressly announce their consent to engage in the act of sexual intercourse for there to be affirmative permission. Permission to engage in an act of sexual penetration can be and, indeed, often is indicated through physical actions rather than words. Permission is demonstrated when the evidence, in whatever form, is sufficient to demonstrate that a reasonable person would have believed that the alleged victim had affirmatively and freely given authorization to the act.

Proof that the act of sexual penetration occurred without the victim's permission can be based on evidence of conduct or words in light of surrounding circumstances, and must demonstrate beyond a reasonable doubt that a reasonable person would not have believed that there was affirmative and freely given permission. If there is evidence to suggest that the defendant reasonably believed that such permission had been given, the State must demonstrate beyond a reasonable doubt that the defendant did not actually believe such permission had been freely given or that such a belief was unreasonable under all the circumstances.

In determining the reasonableness of defendant's belief that a victim had freely given affirmative permission, you must keep in mind that the law places no burden on the alleged victim to have expressed nonconsent or to have denied permission. You should not speculate as to what the alleged victim thought or desired or what she did not resist or protest. The State is not required to prove that the victim resisted. Knowledge is a condition of the mind. It cannot be seen. It can only be determined by inference from defendant's conduct, words or acts. A state of mind is rarely susceptible of direct proof but must ordinarily be inferred from the facts. Therefore, it's not necessary

A-0824-23

that the State produce witnesses to testify that an accused said he had a certain state of mind when he did a particular thing. It's within your power to find that such proof has been furnished beyond a reasonable doubt by inference which may arise from the nature of his acts and conduct and from what he said and did at the particular time and place and from all surrounding circumstances established by the evidence.

As to aggravated sexual assault, the trial court stated, in pertinent part:

The third element that the State must prove beyond a reasonable doubt is that at the time of the penetration, [L.S.] was physically helpless and/or mentally incapacitated, which rendered the victim temporarily or permanently incapable of understanding the nature of her conduct including, but not limited to being incapable of providing consent.

Physically helpless means that condition which a person is unconscious or is physically unable to flee or physically unable to communicate and willingness to act. Mentally incapacitated means that condition which a person is rendered temporarily incapable of understanding or controlling her conduct due to the influence of a narcotic, anesthetic, intoxicant or other substance administered to that person without her prior knowledge or consent or due to any other act committed upon that person which rendered that person incapable of appraising or controlling her conduct.

The fourth element is that the State must prove beyond a reasonable doubt that defendant knew or should have known that [L.S.] was physically helpless and/or mentally incapacitated which rendered the victim temporarily or permanently incapable of understanding the nature of her conduct, including but not limited to being incapable of providing consent.

11

Defendant contends the charges given to the jury "failed to convey that the defense [of consent] must be affirmatively disproved by the State."

The court did not commit plain error in failing to give a sua sponte jury instruction on the defense of consent. First, contrary to defendant's argument, consent is not an affirmative defense to sexual assault or aggravated sexual assault. Whether the victim had not given "affirmative and freely-given permission" to the act of sexual penetration is an element of sexual assault the State must prove beyond a reasonable doubt, rather than an affirmative defense. N.J.S.A. 2C:14-2(c)(1); see also Model Jury Charges (Criminal), "Sexual Assault (N.J.S.A. 2C:14-2c(1))" (approved Aug. 18, 2025). Similarly, for aggravated sexual assault, the State must prove beyond a reasonable doubt

> [t]he victim, at the time of sexual penetration, is one whom the actor knew or should have known was . . . physically helpless or incapacitated . . . which rendered the victim temporarily or permanently incapable of understanding the distinctively sexual nature of the conduct, including, but not limited to, being incapable of providing consent, or incapable of understanding or exercising the right to refuse to engage in the conduct.
>
> [N.J.S.A. 2C:14-2a(7); see also Model Jury Charges (Criminal), "Aggravated Sexual Assault (Mentally Incapacitated) (N.J.S.A. 2C:14-2a(7))" (rev. Feb. 6, 2012).]

A-0824-23

The charges given explicitly illustrate the State's burden to prove these elements beyond a reasonable doubt. The trial court read both model jury instructions verbatim. See State v. Amang, 481 N.J. Super. 355, 409 (App. Div. 2025) ("A jury charge is presumed to be proper when it tracks the model jury charge verbatim because the process to adopt model jury charges is 'comprehensive and thorough.'" (quoting State v. R.B., 183 N.J. 308, 325 (2005))).

The separate model charge on consent, which defendant contends the trial court should have sua sponte read to the jury, provides:

> As part of his/her defense to the charge of ___, the defendant contends that the State has not proven each element of the offense beyond a reasonable doubt because the victim consented to the alleged criminal activity. In considering this contention you should understand that consent of the victim can be a complete defense to a criminal charge only under certain limited circumstances which I will describe for you.
>
> First, you should know that consent in the law has a meaning very similar to its everyday meaning. It is the victim's voluntary and serious agreement or submission to the alleged criminal conduct or the result of that conduct. In order for consent to give rise to a valid defense it must, of course, be given freely and it must be legally effective.
>
> Consent can never be legally effective in providing a defense to a criminal charge if: . . . (b) the victim was by reason of [her] . . . intoxication either

known by the defendant to be unable or was manifestly unable to make a reasonable judgement as to the nature of harmfulness of the conduct charged to constitute an offense.

In determining whether the consent of the victim was freely and voluntarily given, you are advised that consent may be openly expressed, implied, or apparent from the victim's willing participation in the activity in question. Further, you may consider all that [she] said and did at the particular time and place, all of the surrounding circumstances and whether a normal competent person would freely and seriously consent to the conduct with which the defendant is charged.

[Model Jury Charges (Criminal), "Consent (Which Negates an Element of the Offense) (N.J.S.A. 2C:2-10)" (approved Oct. 17, 1988).]

This charge merely restates the key points from the charge given by the court, albeit in a different order. It also lacks specific tailoring to the offenses of sexual assault and aggravated sexual assault. See Savage, 172 N.J. at 389. Moreover, had the trial court included the charge sua sponte, it could have harmed defendant because it would have highlighted to the jury that consent does not apply in any circumstance where the victim is intoxicated and unable to judge the harmfulness of the defendant's conduct.

The court properly charged the jury. There was more than ample evidence to support the jury's verdict. There is no error "sufficient to raise a reasonable doubt . . . as to whether the error led the jury to a result it otherwise might not

14                                                                 A-0824-23

have reached." Bragg, 260 N.J. at 404. We find no basis to disturb the jury verdict and affirm the convictions.

Defendant also challenges the fifteen-year sentence imposed for count two as manifestly excessive and unsupported by a principled assessment of aggravating and mitigating factors. Our review of a sentence is guided by an abuse of discretion standard. State v. Torres, 246 N.J. 246, 272 (2021). We "must affirm the sentence of a trial court unless: (1) the sentencing guidelines were violated; (2) the findings of aggravating and mitigating factors were not 'based upon competent credible evidence in the record;' or (3) 'the application of the guidelines to the facts' of the case 'shock[s] the judicial conscience.'" State v. Bolvito, 217 N.J. 221, 228 (2014) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)). We defer to the court's determination and do not substitute our judgment for that of the sentencing court. State v. Fuentes, 217 N.J. 57, 70 (2014).

N.J.S.A. 2C:44-1(b)(8) (mitigating factor eight) directs courts to consider whether "[t]he defendant's conduct was the result of circumstances unlikely to recur." In determining mitigating factor eight did not apply, the sentencing court reasoned:

> Mitigating factor eight does not apply, defendant's conduct was a result of circumstances

unlikely to recur. In order for the [c]ourt to find mitigating factor eight the [c]ourt would have to greatly speculate as to what the defendant would do. And although noting that the defendant does not have a prior criminal history, the way this whole incident came about, the [c]ourt cannot say for any certainty that he wouldn't do it again if the situation presented itself in this way or some other similar way.

Defendant maintains the sentencing court erred in finding mitigating factor eight inapplicable, highlighting his unblemished criminal history, stable personal life, and several prior instances where L.S. had been passed out drunk while defendant was present and no misconduct had occurred, which defendant argues demonstrate circumstances unlikely to recur.

It is well-established the consideration of aggravating and mitigating factors must be part of the deliberative process. State v. Dalziel, 182 N.J. 494, 505 (2005); State v. Cassady, 198 N.J. 165, 180 (2009). Trial courts must "explain and make a thorough record of their findings to ensure fairness and facilitate review." State v. Comer, 249 N.J. 359, 404 (2022). "Proper sentencing thus requires an explicit and full statement of aggravating and mitigating factors and how they are weighed and balanced." State v. McFarlane, 224 N.J. 458, 466 (2016) (quoting State v. Randolph, 210 N.J. 330, 348 (2012)). Indeed, "[C]ritical to the sentencing process and appellate review is the need for the sentencing court to explain clearly why an aggravating or mitigating factor

16

presented by the parties was found or rejected and how the factors were balanced to arrive at the sentence." State v. Case, 220 N.J. 49, 66 (2014).

The court's finding regarding mitigating factor eight are not clear. The trial court stated "the way this whole incident came about" as reasoning for why there is not "any certainty" defendant would not reoffend. However, certainty is not the standard. As we are returning the matter for a new sentencing hearing, the court will consider the aggravating and mitigating factors.

Defendant further contends the sentencing court engaged in impermissible double counting when it assigned "very strong" weight to aggravating factor two, which directs courts to consider:

> [t]he gravity and seriousness of the harm inflicted on the victim, including whether or not the defendant knew or reasonably should have known that the victim of the offense was particularly vulnerable or incapable of resistance due to advanced age, ill-health, or extreme youth, or was for any other reason substantially incapable of exercising normal physical or mental power of resistance.
>
> [N.J.S.A. 2C:44-1(a)(2).]

In determining aggravating factor two applied, the sentencing court reasoned:

> Aggravating factor two . . . has to do with [the] seriousness of harm inflicted on this victim[;] whether or not defendant knew or should have known -- and I'm

17

paraphrasing -- that this victim was not capable of exercising normal physical or mental power of resistance. That's exactly what happened here. She was passed out, could not resist, could not say no, could not give an indication that she was not wanting to engage in sexual activity with this person who penetrated her from behind as she was laying, passed out on the couch, and was not in a state to advocate or fight for herself, and there was great and serious harm inflicted on her. So this is a ready-made case, an example that you could use to teach people about aggravating factor two. This is aggravating factor [two] personified. So that is a very strong factor.

It is well established that "[e]lements of a crime, including those that establish its grade, may not be used as aggravating factors for sentencing of that particular crime." State v. Lawless, 214 N.J. 594, 608 (2013); State v. Kromphold, 162 N.J. 345, 353 (2000); Fuentes, 217 N.J. at 74-75. Our Supreme Court has therefore cautioned sentencing courts "to avoid 'double counting' circumstances that the Legislature has already incorporated as an element of the offense." Lawless, 214 N.J. at 608. "Injuries to victims of other crimes of which defendant was convicted, however, may be used as aggravating factors for sentencing of the defendant's particular offense." Ibid.

Clearly, as the State concedes, aggravating factor two "is encompassed within the crime of aggravated sexual assault pursuant to N.J.S.A. 2C:14-2a(7)" (count two). Notwithstanding, the State argues that because L.S.'s vulnerable

state was not an element of count one, no impermissible double counting occurred.

The sentencing court did not address whether the conviction under count one should merge with the conviction as to count two. Indeed, the record contains no discussion of merger and the issue was not raised to us on appeal. Upon remand, the trial court shall conduct an analysis of whether the conviction as to count one, second-degree sexual assault, should merge with the conviction as to count two, first-degree aggravated sexual assault. See N.J.S.A. 2C:1-8. In the event the court finds they should merge, it cannot consider aggravating factor two in sentencing on the remaining conviction for first-degree aggravated sexual assault, as that would amount to impermissible double-counting and essentially punish defendant twice for the vulnerable state of the victim. If in the court's analysis the two convictions do not merge, the court shall supply its reasoning for imposing aggravating factor two with respect to count one, despite a separate sentence imposed for count two, consistent with Torres, 246 N.J. at 271-72.

Affirmed as to the convictions and remanded for resentencing in accordance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

19